10-4191-ag
Guamanrrigra v. Holder

BIA
Morace, IJ
A076 018 623

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2011

(Submitted: December 5, 2011                    Decided: February 24, 2012 )

Docket No. 10-4191-ag

JUAN GUAMANRRIGRA,

*Petitioner*,

-v.-

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,

*Respondent.*

Before: MCLAUGHLIN, CABRANES, and WESLEY, *Circuit Judges.*

—————————

This appeal raises two issues of first impression in this Circuit: (1) whether the notice

requirements of Immigration and Nationality Act ("INA") § 239(a)(1), 8 U.S.C. § 1229(a)(1), are

satisfied by service of a Notice to Appear that indicates that the date and time of a hearing will be set

in the future, followed by service of a separate notice specifying the precise date and time of the

hearing; and (2) whether the stop-time rule of INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), is triggered

by proper notice under § 239(a)(1) even if the notice requirements of § 239(a)(2) are not satisfied.

We join five of our sister circuits in holding that service of a Notice to Appear followed by

service of a separate notice indicating the precise date and time of the hearing satisfies the notice

requirements of § 239(a)(1). We further hold that, once a petitioner has been served with notice

complying with INA § 239(a)(1), the stop-time rule of § 240A(d)(1) is triggered, regardless of

whether subsequent notices regarding changes in time or place of proceedings comply with § 239(a)(2).

In this case, the combination of an April 2000 Notice to Appear and a subsequent May 2000 Notice of Hearing provided petitioner with the statutory notice required by § 239(a)(1). Therefore, upon service of a May 2000 Notice, which perfected the notice required by § 239(a)(1), Guamanrrigra's accrual of time of continuous presence was terminated, pursuant to the stop-time rule of § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). Accordingly, because Guamanrrigra cannot demonstrate that he was physically present in the United States for a continuous period of ten years immediately prior to his application for relief, he is ineligible for relief in the form of cancellation of removal and adjustment of status under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).

Petition denied.

_____

Sharyn F. Bertisch, Feinbloom Bertisch LLP, New York, NY, *for Petitioner Juan Guamanrrigra.*

David H. Wetmore (Tony West, Assistant Attorney General; John S. Hogan, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent Eric H. Holder, Jr.*

_____

PER CURIAM:

Petitioner Juan Guamanrrigra, a native and citizen of Ecuador, seeks review of a September 21, 2010, decision of the Board of Immigration Appeals ("BIA"), affirming the September 23, 2009, decision of an Immigration Judge ("IJ") denying his application for cancellation of removal and ordering him removed. *In re Guamanrrigra*, No. A076 018 623 (B.I.A. Sept. 21, 2010), *aff'g* No. A076 018 623 (Immig. Ct. N.Y. City Sept. 23, 2009).

This appeal raises two issues of first impression in this Circuit: (1) whether the notice requirements of Immigration and Nationality Act ("INA") § 239(a)(1), 8 U.S.C. § 1229(a)(1),[1] are satisfied by service of a Notice to Appear that indicates that the date and time of a hearing will be set in the future, followed by service of a separate notice specifying the precise date and time of the hearing; and (2) whether such notice triggers the "stop-time rule" of INA § 240A(d)(1)(A), 8 U.S.C. § 1229b(d)(1)(A),[2] notwithstanding any defect in service of subsequent notices of change in the time or place of the hearing under INA § 239(a)(2), 8 U.S.C. § 1229(a)(2).[3]

We hold that § 239(a)(1) may be satisfied by a combination of notices and that, once notice complying with § 239(a)(1) is provided, the stop-time rule of § 240A(d)(1)(A) is triggered, notwithstanding any defects in subsequent notices under § 239(a)(2).

### BACKGROUND

In September 1995, Guamanrrigra entered the United States "without inspection."[4]  On April 12, 2000, Guamanrrigra was served with a Notice to Appear ("April 2000 NTA"), which was

---

[1] In relevant part, INA § 239(a)(1) provides as follows: "In removal proceedings under section 240 of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following: . . . (G)(i) The time and place at which the proceedings will be held." INA § 239(a)(1), 8 U.S.C. § 1229(a)(1)(G)(i).

[2] In relevant part, INA § 240A(d)(1) provides as follows: "For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2) of this section, when the alien is served a notice to appear under section 239(a) of this title, . . . ."  INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1)(A).

[3] In relevant part, INA § 239(a)(2) provides as follows:  "In removal proceedings under section 240, in the case of any change or postponement in the time and place of such proceedings . . . a written notice shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying—(i) the new time or place of the proceedings, . . . ." INA § 239(a)(2), 8 U.S.C. § 1229(a)(2)(A)(i).

[4] The term of art "without inspection" (or "entry without inspection"), as used in this context, means entering the United States borders without being admitted or paroled by United States immigration officials at a port of entry.  "In general[, a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."  INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i); *see also* INA § 212(a)(9)(B)(ii), 8 U.S.C. § 1182(a)(9)(B)(ii) ("[A]n alien is deemed to be unlawfully present in the United States if the alien . . . is present in the United States without being admitted or paroled.").

mailed to him directly at his Port Chester, New York, address. The April 2000 NTA informed

Guamanrrigra that he was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i),[5] as an

alien present in the United States without having been admitted or paroled, and under

§ 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I),[6] as an alien who, at the time of application for

admission, was not in possession of valid entry documentation. Accordingly, it ordered

Guamanrrigra "to appear before an immigration judge of the United States Department of Justice at:

J.F.K. Federal Bldg. Boston, MA 02203 Room #320 *on [a date] to be set at [a time] to be set* to show why

[he] should not be removed from the United States." Notice to Appear, File No. A76 018 623,

April 12, 2000 (emphasis added).

On May 1, 2000, the immigration court in Boston mailed to Guamanrrigra a Notice of

Hearing in Removal Proceedings ("May 2000 Notice of Hearing") at the address listed on the April

2000 NTA, indicating that his hearing had been scheduled for August 3, 2000, at 9:00 a.m. It is

undisputed that Guamanrrigra and his counsel received both the April 2000 NTA and the May 2000

Notice of Hearing.

On August 1, 2000, an IJ in Boston granted Guamanrrigra's motion for a change in venue to

the immigration court in New York City. On August 11, 2000, the immigration court in New York

City mailed a Notice of Hearing ("August 2000 Notice of Hearing") to Guamanrrigra's counsel,

notifying him that a hearing was scheduled for August 31, 2000, at 9:30 a.m. The certificate of

service indicates that the August 2000 Notice of Hearing was sent to Billy Cris Vidal,

Guamanrrigra's attorney at the time, at 110 W. 34th Street in Manhattan. The EOIR-28 form

---

[5] "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).

[6] "In general . . . [ e]xcept as otherwise specifically provided in this Act, any immigrant at the time of application for admission—(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 211(a) . . . . is inadmissible." INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).

4

(notice of attorney appearance), however, contains a different address for Vidal. [**A 100.**] It is therefore not clear whether the August 2000 Notice of Hearing was ever received by Guamanrrigra's counsel. Guamanrrigra, for his part, contends that he (Guamanrrigra) never received this notice and there is no record evidence that it was mailed to his home address in Port Chester.[7]

When Guamanrrigra did not appear at the August 31, 2000 hearing, the IJ conducted an *in absentia* hearing pursuant to INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A),[8] and ordered Guamanrrigra removed to Ecuador.

Notwithstanding this Order, Guamanrrigra remained in the United States undisturbed for several more years until, on January 2, 2009, he was stopped for speeding in Springfield, Vermont. A United States Immigration and Customs Enforcement electronic "hit" appeared in the computer system employed by the police officer, notifying the officer of the outstanding removal order in the New York immigration court. Guamanrrigra was taken into custody and transferred to the Franklin County Jail, where he was detained for over a month.

On January 15, 2009, Guamanrrigra's counsel filed a motion to reopen his removal proceeding and to rescind the August 2000 *in absentia* order of removal, claiming that Guamanrrigra had never received a Notice to Appear or a hearing notice relating to the August 31, 2000 proceeding. In a written order dated February 11, 2009, the IJ granted Guamanrrigra's motion to reopen, finding that, because the August 2000 Notice of Hearing had not been mailed to the address Guamanrrigra's counsel provided in his standard appearance form, and because a copy of that notice

---

[7] In an affidavit dated January 15, 2009, Guamanrrigra attested: "I never received a Notice to Appear or a hearing notice advising me that I was under removal proceedings or that I was required to appear at a hearing. It was not until 2 January 2009, when I was pulled over by police for speeding in Springfield, VT, that I first became aware of an outstanding removal order in my case."

[8] "Any alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . ." INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A).

was not mailed directly to Guamanrrigra, there was sufficient evidence to suggest that Guamanrrigra had not received notice of the August 31, 2000 hearing.

Guamanrrigra subsequently appeared at a June 2009 hearing in New York, where he confirmed that he had received the April 2000 NTA and the May 2000 Notice of Hearing, admitted the allegations contained therein, and conceded removability. He sought relief in the form of cancellation of removal and adjustment of status pursuant to INA § 240A(b)(1), which permits the Attorney General to cancel removal and adjust the status of an otherwise deportable alien who, among other conditions, "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [his] application." 8 U.S.C. § 1229b(b)(1)(A).[9] The government moved to "pretermit" Guamanrrigra's application for cancellation of removal,[10] arguing that Guamanrrigra had not been physically present in the United States for a continuous period of ten years immediately prior to his January 2009 application for relief, because the service of the April 2000 NTA had stopped the accrual of time of continuous presence in accordance with the stop-time rule of § 240A(d)(1)(A).[11] In response, Guamanrrigra's counsel argued that the failure of the Department of Homeland Security ("DHS") to include the date and time of the projected hearing in the April 2000 NTA, as required under § 239(a)(1)(G)(i),[12]

---

[9] "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien— *(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application*; (B) has been a person of good moral character during such period; (C) has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3), subject to paragraph (5); and (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1) (emphasis added).

[10] "In this context, the term 'pretermit' means '[t]o ignore or disregard purposely.'" *Karageorgious v. Ashcroft*, 374 F.3d 152, 153–54 n.2 (2d Cir. 2004) (alteration in original) (quoting Black's Law Dictionary 1206 (7th ed. 1999)). The IJ is authorized to pretermit an application for cancellation of removal if "'the applicant has failed to establish statutory eligibility for relief.'" *Id.* (quoting 8 C.F.R. § 240.21(c)(1)).

[11] *See* note 2, *ante.*

[12] *See* note 1, *ante.*

rendered the document fatally defective, and therefore service of the April 2000 NTA had not terminated Guamanrrigra's accrual of time of "continuous" presence.

Following briefing and a September 2009 merits hearing, the IJ issued an oral decision denying Guamanrrigra's application for cancellation of removal and ordering him removed to Ecuador. The IJ found that "personal service of the [April 2000 NTA] on [Guamanrrigra] revealing to him that he is in proceedings [and] the consequences of failing to appear in proceedings," constituted proper service under § 239(a)(1), notwithstanding the fact that the April 2000 NTA did not specify the date and time of the projected hearing. Moreover, the IJ found that Guamanrrigra's concerns that "service [of the April 2000 NTA] was not properly consummated" under § 239(a)(1) were mitigated by the fact that he indisputably received a Notice of Hearing on May 1, 2000, that specified the date, time, and location at which his hearing would be held. Accordingly, the IJ found that Guamanrrigra's "continuous presence in the United States was tolled as of April 12, 2000, when [he] was properly served with the Notice to Appear pursuant to Section 239(a) of the Act," and therefore he was ineligible for cancellation of removal and adjustment of status under § 240A(b)(1).

Guamanrrigra appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). In September 2010, the BIA dismissed Guamanrrigra's appeal, affirming the IJ's decision denying cancellation of removal. Relying on the Seventh Circuit's decision in *Dababneh v. Gonzales*, 471 F.3d 806 (7th Cir. 2006), the BIA held that a Notice to Appear indicating that the date and time of the alien's hearing is forthcoming, combined with a subsequent Notice of Hearing specifying the date and time of the hearing, complies with the notice requirements of § 239(a)(1), and therefore service of these documents triggers the stop-time rule under § 240A(d)(1), so as to cut off Guamanrrigra's accrual of time of continuous presence in the United States. The BIA also found that, contrary to Guamanrrigra's argument, neither the Boston immigration court's order transferring venue to New York City prior to his initial hearing on August 3, 2000, nor the New York City immigration court's

7

subsequent failure to provide proper notice of his August 31, 2000 hearing, "vitiate[d] the effectiveness" of notice that Guamanrrigra had already received.

Guamanrrigra timely petitioned this Court for review of the BIA's decision.

## ***DISCUSSION***

### I.

Where, as here, the BIA "adopts the decision of the IJ and merely supplements the IJ's . . . decision, we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). Because Guamanrrigra's arguments are purely legal, we review them *de novo*. *See Ali v. Mukasey*, 525 F.3d 171, 173 (2d Cir. 2008).

### II.

Under § 240A(b)(1)(A), an alien who is not a lawful permanent resident,[13] may establish eligibility for cancellation of removal and adjustment of status if he can demonstrate, *inter alia*, that he has been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A).[14] However, under the so-called stop-time rule, "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 239(a)." INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1).[15] Pursuant to § 239(a)(1), the Notice to Appear must specify, *inter alia*, the "time and place at which the proceedings will be held." INA § 239(a)(1)(G)(i), 8 U.S.C. § 1229(a)(1)(G)(i).

Guamanrrigra argues that the stop-time rule is triggered only by service of a Notice to Appear that, in and of itself, comports with all of the notice requirements of § 239(a)(1), including

---

[13] The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." *See* INA § 101(a)(20), 8 U.S.C. § 1101(a)(20).

[14] *See* note 9, *ante*.

[15] *See* note 2, *ante*.

8

the time and place requirements of § 239(a)(1)(G)(i).[16]  Accordingly, he contends that, because his April 2000 NTA did not itself specify the date and time of his hearing, it did not comply with the statutory notice requirements, and therefore did not trigger the stop-time rule.  In addition, he argues that, even if the April 2000 NTA followed by the May 2000 Notice of Hearing together satisfied the requirements of § 239(a)(1), the stop-time rule was not triggered because the Government failed to send an updated notice of the new date and time of his hearing in New York following the change of venue, as required by § 239(a)(2).[17]

We adopt the rationale articulated by the Seventh Circuit in *Dababneh v. Gonzales*, 471 F.3d 806 (7th Cir. 2006), to resolve the issue of whether service of a Notice to Appear that indicates that the date and time of a hearing is forthcoming, followed by service of a separate notice specifying the precise date and time of the hearing, satisfies the notice requirements of § 239(a)(1).

In *Dababneh*, the Seventh Circuit held that the notice requirements of § 239(a)(1) may be satisfied by a combination of documents that, jointly, provide the specific notice required by the statute.  471 F.3d at 810 ("[T]he fact that the government fulfilled its requirements under INA § 239(a) in two documents did not strip the IJ of jurisdiction.").  In so holding, the Seventh Circuit recognized that circumstances often arise that make it impracticable for the DHS to provide an alien with the precise date and time of his initial removal hearing at the moment it serves the initial Notice to Appear, and that in these instances, the DHS "may indicate in the NTA that it will give the alien subsequent notice of the precise [date and time] of the hearing once it files the NTA with the appropriate immigration court."  *Id.* at 809 (citing 8 C.F.R. § 1003.18).

Here, Guamanrrigra was served with a Notice to Appear on April 11, 2000, which ordered him to appear before an IJ at a date and time "to be set," to show why he should not be removed from the United States.  On May 1, 2000, the immigration court in Boston sent Guamanrrigra a

---

[16] *See* note 1, *ante.*

[17] *See* note 3, *ante.*

9

follow-up hearing notice stating that his hearing was scheduled to take place at 9:00 a.m. on August 3, 2000, in Room 320 of the JFK Federal Building in Boston. Guamanrrigra does not dispute that he received the April 2000 NTA and the May 2000 Notice of Hearing. Because these two notices, together, provided the specific notice required by § 239(a)(1), we hold that the statutory notice requirements were satisfied.

Guamanrrigra contends that, even if the combination of the April 2000 NTA and the May 2000 notice of hearing satisfied § 239(a)(1)'s notice requirements, the stop-time rule of § 240A(d)(1) was not triggered because the subsequent August 2000 Notice of Hearing (which followed the change of venue to New York) was not properly served upon him, or his counsel of record, as required by § 239(a)(2). We disagree.

Although the stop-time rule refers to § 239(a) generally, it specifies that the time of accrual of physical presence "shall be deemed to end . . . when the alien is served with *a notice to appear*." INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (emphasis added). The adequacy of any subsequent "notice of change in time or place of proceedings," as required by § 239(a)(2), is therefore irrelevant to the triggering of the stop-time rule. *See Dababneh*, 471 F.3d at 810 ("The language of INA § 240A(d) is clear: if an alien has received an NTA, the period of continuous presence is deemed to end."). This reading is consistent with the purpose the stop-time rule, which is to "eliminate the incentive for aliens to delay their deportation proceedings in order to attain the [ten] years of continuous residence in the United States required to be eligible for [cancellation of removal]." *Rojas-Reyes v. INS*, 235 F.3d 115, 123 (2d Cir. 2000) (citing S. Rep. No. 104-249, at 15 (1996) and H.R. Rep. No. 104-469(I), at 122 (1996)).

Therefore, as a matter of first impression in our Circuit, we hold that the stop-time rule is triggered upon service of a Notice to Appear that (alone or in combination with a subsequent notice) provides the notice required by § 239(a)(1), notwithstanding any imperfections in the service of subsequent notices of changes in the time or place of a hearing under § 239(a)(2).

10

Accordingly, because service of the May 2000 notice of hearing perfected the notice required by § 239(a)(1), Guamanrrigra's accrual of time of continuous presence in the United States was terminated, pursuant to the stop-time rule of § 240A(d)(1), on May 1, 2000, more than five years before he would have been eligible for cancellation of removal under § 240A(b)(1). The fact that service of the subsequent August 2000 Notice of Hearing may have been inadequate has no bearing on the triggering of the stop-time rule.

We therefore agree with the BIA's holding that Guamanrrigra is ineligible for relief in the form of cancellation of removal and adjustment of status under § 240A(b)(1) because he failed to demonstrate that he was "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [his] application" for relief. For these reasons, the petition is denied.

## *CONCLUSION*

To summarize, we hold that:

(1) Service of the April 2000 Notice to Appear and the May 2000 Notice of Hearing, in combination, satisfied the notice requirements of INA § 239(a)(1), 8 U.S.C. § 1229(a)(1);

(2) Such service triggered the stop-time rule of INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), notwithstanding any imperfections in the service of the subsequent August 2000 Notice of Hearing; and

(3) Because the stop-time rule was triggered upon receipt of the May 2000 Notice of Hearing, Guamanrrigra's accrual of time of continuous presence is deemed to have ended on May 1, 2000, more than five years before he would have been eligible for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).

11

For the foregoing reasons, the petition for review is **DENIED**. As we have completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**, and any pending motion for a stay of removal in this petition is **DISMISSED** as moot.