# Matter of Judith Elma CAMARILLO, Respondent

*Decided December 2, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Under the "stop-time rule" at section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1) (2006), any period of continuous residence or continuous physical presence of an alien applying for cancellation of removal under section 240A is deemed to end upon the service of a notice to appear on the alien, even if the notice to appear does not include the date and time of the initial hearing.

FOR RESPONDENT: Maria Estela Garcia-Yzaguirre, Esquire, Brownsville, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Delia Irene Gonzalez, Assistant Chief Counsel

BEFORE: Board Panel: MILLER, MALPHRUS, and MULLANE, Board Members.

MALPHRUS, Board Member:

In a decision dated May 5, 2009, an Immigration Judge found the respondent removable and granted her application for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (2006). The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala who has been a lawful permanent resident since 2000. On August 29, 2005, she was personally served a Notice to Appear (Form I-862), which included the phrase "To be set" in the space provided for the date and time of the hearing. The

Notice to Appear was later filed with the Harlingen Immigration Court, which issued a notice of hearing on November 9, 2007.[1]

In removal proceedings, the Immigration Judge found the respondent to be removable as charged for alien smuggling.[2] The Immigration Judge determined that the respondent was admitted to the United States when she adjusted to lawful permanent resident status on August 7, 2000, and he granted her application for cancellation of removal, concluding that she had accrued the requisite 7 years of continuous residence to establish eligibility for that relief.[3] According to the Immigration Judge, the Notice to Appear was not "served" for purposes of terminating the respondent's period of residence under section 240A(a)(2) of the Act until the Immigration Court's issuance of the notice of hearing informing her of the date and time for her appearance.

The DHS has appealed, arguing that the respondent is not statutorily eligible for cancellation because section 240A(d)(1) of the Act provides that any period of continuous residence ends "when the alien is served a notice to appear." Thus the DHS contends that even though the Notice to Appear did not specify a date and time of the hearing, the respondent's continuous residence ended when it was served in person on August 29, 2005.[4] We agree with the DHS.

---

[1] The DHS filed the respondent's Notice to Appear with the Immigration Court on November 2, 2007. There is no information in the record regarding the reason for the lapse between the service of the Notice to Appear and its filing with the Immigration Court, although we recognize that the case originated in a high volume border district. In any event, the best practice is for a notice to appear to be filed with the Immigration Court as soon as it is practical to do so under the circumstances. *Cf.* 8 C.F.R. § 1003.18(b) (2011) (providing that a notice to appear shall include the time, place, and date of an initial removal only "where practicable").

[2] The respondent was found removable as an alien who is inadmissible under section 212(a)(6)(E)(i) of the Act, 8 U.S.C. § 1182(a)(6)(E)(i) (2006), because she knowingly encouraged, induced, assisted, abetted, or aided any other alien to try to enter the United States. This charge arose when the respondent sought admission to the United States as a returning lawful permanent resident on August 29, 2005. At that time, she was charged with attempting to smuggle aliens into the United States, but she was paroled into the country to appear in removal proceedings. During her hearing, the DHS presented conviction records showing that the respondent pled guilty on August 31, 2005, to knowingly and willfully aiding and abetting two aliens to attempt to gain illegal entry into the United States in violation of 18 U.S.C. § 2 (2000) and section 275(a)(3) of the Act, 8 U.S.C. § 1325(a)(3) (2000).

[3] The respondent's conviction for alien smuggling did not make her ineligible for cancellation of removal because the offense is not an aggravated felony. *See* section 240A(a)(3) of the Act.

[4] There is no dispute as to when the respondent received both the Notice to Appear and the notice of hearing.

## II.  ANALYSIS

### A.

Section 240A(d)(1) of the Act, which sets forth the provision commonly referred to as the "stop-time" rule, states in pertinent part:

> [A]ny period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 239(a) [of the Act] . . . .

Section 239(a)(1) of the Act, 8 U.S.C. § 1229(a)(1) (2006), provides, in pertinent part:

> In removal proceedings under section 240, written notice (in this section referred to as a "notice to appear") shall be given . . . to the alien . . . specifying the following:
>    (A)  The nature of the proceedings against the alien.
>    . . . .
>    (D)  The charges against the alien, and the statutory provisions alleged to have been violated.
>    . . . .
>    (G)  The time and place at which the proceedings will be held.

We must interpret these provisions to determine whether the "stop-time" rule applies at the time a notice to appear is served on the alien, even if it does not include all of the information listed in section 239(a)(1) of the Act.

### B.

In applying settled principles of statutory construction, we look first to the particular statutory language at issue. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  We must initially decide whether the language at issue has a plain and unambiguous meaning. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Issues regarding whether the language is plain and unambiguous are "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341; *see also, e.g.*, *Matter of J-B-M- & S-M-*, 24 I&N Dec. 208 (BIA 2007).

Furthermore, when interpreting a statute, a particular word or phrase should not be examined in isolation. *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000).  Instead, we are charged with reading the words "in their context and with a view to their place in the overall

statutory scheme." *Id*. at 133 (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)) (internal quotation mark omitted). We must "interpret the statute 'as a symmetrical and coherent regulatory scheme' and 'fit, if possible, all parts into an harmonious whole.'" *Id.* (citation omitted) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995), and *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)); *see also, e.g.*, *Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010).

## C.

The Immigration Judge reasoned, and the respondent argues, that the reference in section 240A(d)(1) of the Act to an alien being "served a notice to appear under section 239(a)" mandates that a notice to appear must comply with all of the provisions of section 239(a)(1) in order for its service to "stop time" toward accrual of continuous residence. One provision of section 239(a)(1) states that a notice to appear must specify the "time and place at which the proceedings will be held." Section 239(a)(1)(G) of the Act. Thus, the Immigration Judge concluded that the "stop-time" rule did not apply until the respondent was sent the notice of hearing specifying the date and time of her hearing.

An equally plausible reading, however, is that the reference in section 240A(d)(1) to a notice to appear "under section 239(a)" is simply definitional, that is, it indicates what the words "notice to appear" refer to. Read this way, section 240A(d)(1) merely specifies the document the DHS must serve on the alien to trigger the "stop-time" rule and does not impose substantive requirements for a notice to appear to be effective in order for that trigger to occur. Thus, the statutory language at issue is ambiguous on this point.

We agree with the DHS that the key phrase is "served a notice to appear" and that the best reading of the statute as a whole is that Congress intended the phrase "under section 239(a)" after "notice to appear" to specify the document the DHS must serve on the alien to trigger the "stop-time" rule. Section 239(a) is the primary reference in the Act to the notice to appear, and it defines "the written notice" that is given to the alien to initiate removal proceedings, which it says is "referred to as a 'notice to appear.'"

Further support for the definitional reading of the "stop-time" rule is the breadth of its reference to the entirety of "section 239(a)." That section encompasses more than just section 239(a)(1), and is, in fact, subdivided into several paragraphs. Section 239(a)(1) deals with notice of the date and time of the hearing, matters that are often subject to change. Section 239(a)(2) clearly accounts for this reality, outlining the procedures to follow when notice

must be given of such changes.[5]  The language of section 239(a)(2) indicates that Congress envisioned that circumstances beyond the control of the DHS would require a change in the hearing date and specifically provided that such notification could occur after the issuance of the notice to appear.

The regulation at 8 C.F.R. § 1003.18(b) (2011) further supports this reading because it expressly provides that the time, place, and date of an initial removal hearing shall be provided in the notice to appear only "where practicable."  If the date and time are not set when the notice to appear is issued, the Immigration Court is responsible for scheduling the hearing and providing notice regarding the time, place, and date of the initial hearing.  *Id.* For various reasons, it is often not practical to include the date and time of the initial removal hearing on the notice to appear.  *See Dababneh v. Gonzales*, 471 F.3d 806, 809 (7th Cir. 2006) ("DHS frequently serves [notices to appear] where there is no immediate access to docketing information.")

According to the Immigration Judge and the respondent, two documents, the notice to appear and the notice of hearing, combine together to comprise the requisite service of a notice to appear under section 239(a) of the Act for purposes of the "stop-time" rule.  No authority, however, supports the contention that a notice of hearing issued by the Immigration Court is a constituent part of a notice to appear, the charging document issued only by the DHS.  To the contrary, the date of service of a notice to appear is not ineffective simply because the document does not include the specific date and time of the initial hearing.  *See Popa v. Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009) (holding, in the context of an in absentia order, that a notice to appear which states that a date and time will be set later is not defective as long as a notice of the hearing is later sent to the alien); *see also Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Haider v. Gonzales*, 438 F.3d 902, 907 (8th Cir. 2006).

The Immigration Judge relied in part on *Dababneh v. Gonzales*, 471 F.3d at 810, which stated that the "stop-time" rule cut off the respondent's accrual of physical presence once the DHS served him with both the notice to appear and the notice of hearing.  However, the court did not decide the issue before us because the respondent was ineligible for cancellation of removal regardless of whether the applicable date under the "stop-time" rule was the date of service of the notice to appear or the notice of hearing.  *Id.*  The holding in *Dababneh* was that a notice to appear is not defective if it does not include the date and time of the hearing, so the Immigration Court did not lack

---

[5]  Also, there is an exception to the notice requirements under section 239(a) if the alien has failed to provide an address.  *See* section 240(b)(5)(B) of the Act, 8 U.S.C. § 1229a(b)(5)(B) (2006).

jurisdiction to commence proceedings based on a notice to appear that did not include such information, as long as it was provided to the alien later. *Id*. at 808-09.[6]

## D.

The legislative history behind the "stop-time" rule, which was enacted into law by section 304(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-595 ("IIRIRA"), further supports our interpretation of this statute. The legislative history shows that the "stop-time" rule was enacted to address "perceived abuses arising from the prior practice of allowing periods of continuous physical presence to accrue after service of a charging document." *Matter of Cisneros*, 23 I&N Dec. 668, 670 (BIA 2004). By enacting the rule, Congress intended to prevent aliens from being able "to 'buy time,' during which they could acquire a period of continuous presence that would qualify them for forms of relief that were unavailable to them when proceedings were initiated." *Id*. (quoting Report of the Committee on the Judiciary, House of Representatives, H.R. Rep. No. 104-469 (1996)).

We find further guidance in a committee explanatory memorandum included in the Congressional Record, which discussed the amended transitional rule on physical presence for those in proceedings as of the effective date of the IIRIRA. We relied on this document as authoritative legislative history in *Matter of Nolasco*, 22 I&N Dec. 632, 640-41 (BIA 1999). In explaining that the "stop-time" rule barred additional time from accruing after receipt of either a notice to appear or an order to show cause, the memorandum stated:

> Under the rules in effect before [enactment of the "stop-time" rule], [an] otherwise eligible person could qualify for suspension of deportation if he or she had been

---

[6] In a footnote in *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 937 n.3 (9th Cir. 2005) (per curiam), the United States Court of Appeals for the Ninth Circuit commented that where a notice to appear failed to specify the hearing date or location, accrual of physical presence ended upon service of a proper hearing notice. However, this comment was not accompanied by any analysis of the laws and regulations governing the issuance or service of a notice to appear. Nor did it address the holding of the case, which concerned the retroactive application of the 90/180-day rule under section 240A(d)(2) of the Act. Furthermore, the court's holding in a more recent decision, in which footnote 3 of *Garcia-Ramirez* was not addressed, arrived at a different conclusion. *Popa v. Holder*, 571 F.3d at 895-96. Therefore, the comment in footnote 3 appears to be dicta, and we read *Popa* as expressing the Ninth Circuit's view on this issue.

continuously physically present in the United States for seven years, regardless of whether or when the Immigration and Naturalization Service had initiated deportation proceedings against the person through the issuance of an order to show cause ("OSC") to that person.

*Id.* at 640 (quoting 143 Cong. Rec. S12265, S12266 (daily ed. Nov. 9, 1997), at 1997 WL 693186).  This legislative history demonstrates that Congress intended for the "stop-time" rule to break an alien's continuous residence or physical presence in the United States when the Immigration and Naturalization Service (now the DHS) serves the charging document.

Removal proceedings are commenced by the filing of a notice to appear with the Immigration Court.  8 C.F.R. § 1239.1(a) (2011).  However, the commencement of proceedings is a separate issue from the service of the notice to appear.  The application of the "stop-time" rule is, by statute, based on service of the notice to appear, not the commencement of proceedings, and the issue in dispute in this case involves when the notice to appear is effective to terminate the accrual of continuous residence.  The legislative history indicates that the reference in section 240A(d)(1) of the Act to section 239(a) is merely to identify the document that the DHS must serve on the respondent to effect the "stop-time" rule.  A primary purpose of a notice to appear is to inform an alien that the Government intends to have him or her removed from the country, but the inclusion of the date and time of the hearing is not necessary for the Government's intention in this regard to be conveyed.

As noted previously, it is the Immigration Court that sends the notice of hearing if the date and time of the hearing is not included on the notice to appear, and there is no reason to conclude that Congress would have expected that scheduling delays in the Immigration Court resulting from pending caseloads or other administrative issues would affect when an alien's continuous residence or physical presence ends for purposes of eligibility for relief from removal.  Further, another reason an Immigration Court's notification of a hearing date does not "serve" a notice to appear is that neither the Immigration Court nor the Immigration Judge has been delegated the authority to serve a notice to appear.  *See* 8 C.F.R. §§ 235.6(a), 239.1(a), 1235.6(a) (2011).  Rather, the power to serve a notice to appear rests solely within the purview of the DHS.  8 C.F.R. §§ 2.1, 239.1(a)(41) (2011); *see also Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 522-23 (BIA 2011); *Matter of Bahta*, 22 I&N Dec. 1381 (BIA 2000).[7]

---

[7] If the respondent is correct that all of the provisions of section 239(a)(1) of the Act must be met for a notice to appear to be effective, then the DHS's service of a Form I-261 (Additional Charges of Removability) substituting charges different from those on the

(continued...)

E.

Having considered the language and design of the statute, the applicable regulations, and the congressional intent behind the provisions of section 240A(d)(1) of the Act, we conclude that the DHS's service of a notice to appear triggers the "stop-time" rule, regardless of whether the date and time of the hearing have been included in the document. We do not read section 240A(d)(1) as requiring the service of both the notice to appear and the notice of hearing to activate the "stop-time" rule. The key date for purposes of the "stop-time" rule is the date when the alien is served the notice to appear. "[Section 240A(d)(1)(A) of the Act] provides that the accrual of continuous physical presence is deemed to end when an alien is served a notice to appear." *Matter of Avilez*, 23 I&N Dec. 799, 801 (BIA 2005); *see also Arenas-Yepes v. Gonzales*, 421 F.3d 111, 115 (2d Cir. 2005) ("Under the so-called 'stop-time' provision, the period of time to be counted towards the determination of whether an alien has met the continuous physical presence requirement necessary to be eligible for relief from deportation (or removal) ends when the alien is served with a charging document.") (holding that the imposition of the "stop-time" rule was not impermissibly retroactive).

While the relevant statutory language of the "stop-time" rule at section 240A(d)(1) of the Act is ambiguous, our application represents, at a minimum, a reasonable choice within a gap left open by Congress. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984). We adopt this approach as a matter within our adjudicative authority and administrative judgment. *Id.* at 843-44; *see also Negusie v. Holder*, 555 U.S. 511, 523 (2009); *INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002).

F.

The respondent also argues on appeal that the Immigration Judge erred in finding that she was admitted to the United States "in any status"

---

(...continued)

original notice to appear would presumably start the accrual of time anew for purposes of the "stop-time" rule. This is so because only the I-261, not the original notice to appear, would have included the "charges against the alien," which is one of the requirements listed in section 239(a)(1) of the Act. *See* section 239(a)(1)(D) of the Act. However, given that section 240A(d)(1) refers to an alien being "served a notice to appear," there is no reason to conclude that Congress would have intended an alien to be able to accrue time between service of the notice to appear and service of an I-261, which may occur much later and, in fact, "[a]t any time during the proceeding." 8 C.F.R. § 1240.10(e) (2011).

on August 7, 2000. Section 240A(a)(2) of the Act. She contends that she was admitted in 1996 when she was paroled into the country on humanitarian grounds, based on her pending application for adjustment of status, and was provided work authorization and a travel document. Thus, the respondent claims that she has established the requisite 7 years of continuous residence under section 240A(a)(2) of the Act, regardless of how the "stop-time" rule is applied. We do not agree.

The respondent's parole does not constitute an "admission." Section 212(d)(5)(A) of the Act, 8 U.S.C. §§ 1182(d)(5)(A) (2006), expressly provides that an alien who is paroled for humanitarian reasons is not regarded as having been admitted. *See also* sections 101(a)(13)(A), (B) of the Act, 8 U.S.C. §§ 1101(a)(13)(A), (B) (2006); *Akhtar v. Gonzales*, 450 F.3d 587, 590-92, *reh'g granted on other grounds*, 461 F.3d 584 (5th Cir. 2006); *Altamirano v. Gonzales*, 427 F.3d 586, 590-91 (9th Cir. 2005); *Matter of G-A-C-*, 22 I&N Dec. 83, 87, 89 (BIA 1998). Thus, the Immigration Judge properly determined that the respondent's actual admission "in any status" for purposes of section 240A(a)(2) of the Act was on August 7, 2000. When the respondent's Notice to Appear was served on August 29, 2005, it ended her continuous residence in the United States and rendered her ineligible for cancellation of removal under section 240A(a) of the Act.[8]

## III.  CONCLUSION

We hold that under section 240A(d)(1) of the Act, any period of continuous residence or continuous physical presence of an alien applying for cancellation of removal under section 240A is deemed to end upon the service of a notice to appear on the alien, even if the notice to appear does not include the date and time of the initial hearing. The respondent is therefore not eligible for cancellation of removal. Accordingly, the DHS's appeal will be sustained and the record will be remanded to give the respondent an opportunity to apply for any other relief from removal for which she may be eligible.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[8] The respondent is also ineligible for cancellation of removal under section 240A(b) of the Act. She has not met the 10-year continuous physical presence requirement because she entered the United States in 1996 and her Notice to Appear was issued in 2005. Section 240A(b)(1)(A) of the Act.