RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JORGE ALBERTO GONZALEZ-GARCIA,

>*Petitioner,*

*v.*

No. 13-4417

ERIC H. HOLDER, JR.,

>*Respondent.*

On Petition for Review from the
United States Board of Immigration Appeals.
No. A088 642 766—Memphis.

Argued:  October 8, 2014

Decided and Filed:  October 24, 2014

Before:  BOGGS, SUTTON and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Maris J. Liss, GEORGE P. MANN & ASSOCIATES, P.C., Farmington Hills, Michigan, for Petitioner.  Stefanie Notarino Hennes, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Maris J. Liss, GEORGE P. MANN & ASSOCIATES, P.C., Farmington Hills, Michigan, James P. Tinsley, Tupelo, Mississippi, for Petitioner.  Stefanie Notarino Hennes, Leslie McKay, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

SUTTON, Circuit Judge.  The Immigration and Nationality Act makes some forms of relief available only to applicants who have been physically present in the United States for at

1

least ten years.  This ten-year clock stops ticking when the government serves the applicant with a "notice to appear" in immigration court.  Jorge Alberto Gonzalez-Garcia, a Mexican citizen, entered the United States in September 1999 and received a notice to appear in June 2009—just three months before the ten-year clock expired.  The notice to appear contained all of the requisite information, save one item:  the date and time of the initial hearing.  In a precedential opinion, the Board of Immigration Appeals has held that the ten-year clock stops running upon service of the notice to appear, even if it fails to tell the immigrant when the hearing will occur. *Matter of Camarillo,* 25 I. & N. Dec. 644 (BIA 2011).  This reasonable interpretation of the relevant statutes is entitled to *Chevron* deference.  Nor does it make a difference that the government later amended the charge to account for the reality that Gonzalez-Garcia entered the country legally but stayed longer than his visa allowed.  For these reasons and those elaborated below, we dismiss the petition.

I.

Gonzalez-Garcia entered the United States with a temporary-visitor visa on September 25, 1999.  Three months shy of his ten-year anniversary in the United States, police arrested him in Mississippi for driving without a license.  At the county sheriff's office, a federal immigration-enforcement agent interviewed him, reporting afterward that Gonzalez-Garcia crossed the United States-Mexico border illegally.  The agent served Gonzalez-Garcia with an I-862 "notice to appear" form, which instructed him that the Department of Homeland Security planned to initiate removal proceedings against him.

The I-862 notice-to-appear form, dated June 22, 2009, told Gonzalez-Garcia about the removal proceedings against him, the legal authority behind them, his allegedly illegal conduct, and the charges against him.  *See* 8 U.S.C. § 1229(a)(1)(A), (B), (C), (D).  The back of the form advised him of his right to counsel, his duty to keep the Attorney General apprised of his address, and the consequences of his failure to appear.  *See id.* § 1229(a)(1)(E), (F), (G)(ii).  The form did not, however, tell him where and when to show up, even though that is one of the items the statute directs the form to contain.  *See id.* § 1229(a)(1)(G)(i).  Immigration court staff gave him this information in a separate notice on August 10, 2009.

The government initially charged Gonzalez-Garcia only with entering the country illegally. Gonzalez-Garcia contested the charges by producing a copy of his passport, which showed that he arrived in the United States with a legal visa. The government responded by filing an I-261 "additional charges of inadmissibility/deportability" form on January 12, 2011. This new form conceded Gonzalez-Garcia was "admitted to the United States on or about September 25, 1999," but added a new charge: that he remained "for a time longer than permitted." A.R. 297.

The immigration judge found that Gonzalez-Garcia had overstayed his visa. In response, Gonzalez-Garcia applied for "cancellation of removal," a discretionary form of relief available to aliens who have been continuously physically present in the United States for at least ten years. *See* 8 U.S.C. § 1229b(b)(1). Under the Immigration and Nationality Act's "stop-time" provision, the ten-year clock ends "when the alien is served a notice to appear under section 1229(a) of this title." *Id.* § 1229b(d)(1). Because Gonzalez-Garcia was served with the I-862 in June 2009, the judge found that he missed the ten-year mark by three months.

Gonzalez-Garcia contended that his removal nonetheless qualified for cancellation because the I-862 suffered from two defects: It lacked "[t]he time and place at which the proceedings will be held" in violation of § 1229(a), and the government could not sustain the charge in it—that he entered the country illegally. As a result, Gonzalez-Garcia claimed, the government did not serve him with a valid notice to appear until it added the other charge in January 2011—one year and four months after the ten-year safe harbor period had run.

The immigration judge, and later the Board of Immigration Appeals, disagreed. Both relied on a 2011 Board decision, *Matter of Camarillo*, 25 I. & N. Dec. 644 (B.I.A. 2011), which held that such defects in a notice to appear do not prevent the triggering of the stop-time provision. Gonzalez-Garcia filed a timely petition for review in our court.

II.

Gonzalez-Garcia first insists that an incomplete notice-to-appear form does not trigger the stop-time rule. Under the Immigration and Nationality Act, "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when

the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1). Section 1229(a) defines a "notice to appear" as a "written notice" specifying seven pieces of information: (1) the "nature of the proceedings against the alien," (2) the "legal authority under which the proceedings are conducted," (3) the "acts or conduct alleged to be in violation of law," (4) the "charges against the alien," (5) the alien's right "to secure counsel," (6) the "requirement that the alien must provide the Attorney General with a written record of an address and telephone number," and (7) the "time and place at which the proceedings will be held." What happens when the I-862 notice to appear mentions each item except the last one?

As Gonzalez-Garcia sees it, an I-862 is not a "notice to appear under section 1229(a)" for purposes of the stop-time rule unless it contains the time and place of the hearing. That is a reasonable interpretation of the statute. The problem for Gonzalez-Garcia is that it is not the only reasonable way to construe these provisions.

When a statute ambiguously lends itself to more than one interpretation, we may not substitute one party's construction of the statute for a reasonable interpretation issued by the agency charged with administering it. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Congress has delegated authority to interpret the Immigration and Nationality Act to the Board of Immigration Appeals. 8 U.S.C. § 1103(a)(1); *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999). Invoking that authority, the Board articulated a different, but equally reasonable, interpretation of these laws. In its view, the provision's reference to "a notice to appear under section [1229(a)] . . . merely specifies the document the DHS must serve on the alien" without "impos[ing] substantive requirements for a notice to appear to be effective." *Matter of Camarillo*, 25 I. & N. Dec. at 647.

The Board supports this interpretation on several grounds. The purpose of the stop-time provision is to prevent aliens from accruing continuous physical presence in the United States while litigating their removal proceedings. *Id.* at 647. Once an alien receives an I-862 notice-to-appear form—and with it notice that the government plans to initiate removal proceedings—this purpose might be undermined if an alien continues to accumulate physical presence while the government schedules a hearing. *Id.* The Board also thought it impractical to require the Department of Homeland Security always to include the time and place of removal

proceedings in its notices to appear, as a different department (the Department of Justice's Executive Office for Immigration Review) schedules the proceedings and notifies the alien about them. *Id.* at 648; *see* 8 C.F.R. § 1003.18.

This interpretation of the stop-time provision permissibly construes the text of the statute and the context in which it appears. The statute identifies a form that must be served on the immigrant. It does not say that only a form that contains every item, including yet-to-be-determined dates for a hearing, stops the ten-year clock. This interpretation also respects the setting in which these requirements appear, where one immigration authority (the Department of Homeland Security) is responsible for identifying potentially illegal immigrants and another authority (the Executive Office for Immigration Review) is responsible for scheduling and holding the hearings resulting from these charges. Any other interpretation would require Homeland Security investigators to place hearing dates on all notices to appear whether the Executive Office was prepared to schedule them or not—an approach that might do more to confuse than inform immigrants about the process triggered by the notice. Our acceptance of this interpretation is not the first time a court has held that a "defective document nonetheless serves a useful purpose" and that a given failure to comply with it may be cured later. *Yi Di Wang v. Holder*, 759 F.3d 670, 674 (7th Cir. 2014). In *Becker v. Montgomery*, 532 U.S. 757 (2001), the Supreme Court determined that an appellant's failure to sign a notice of appeal, a mandatory requirement under Rule 4 of the Federal Rules of Appellate Procedure, could be corrected by a signature after the deadline had run. Just as that was a "curable defect," so was this. *Yi Di Wang*, 759 F.3d at 674. In reaching this conclusion, we join the Fourth and Seventh Circuits, who have come to the same conclusion in well-reasoned opinions. *See id.*; *Urbina v. Holder*, 745 F.3d 736, 740 (4th Cir. 2014).

That does not end the case. Even if an incomplete notice to appear may stop the ten-year clock, Gonzalez-Garcia adds, the same should not be true with respect to a notice to appear that identifies an unsustainable charge and is amended after the ten-year period to impose a sustainable charge. Recall that the initial notice to appear (within the ten-year period) turned on the allegation that Gonzalez-Garcia entered the country illegally and the later notice to appear (after the ten-year period) turned on the allegation that he overstayed his visa. Does this make a

difference? No. The statutory regime stops the ten-year clock when the government serves a notice to appear on the immigrant. Not all notices to appear will lead to successful prosecutions just as not all indictments will do so. The point is that the immigrant may not continue to accrue time toward the ten-year safe harbor while the removal process continues, a process that often lasts many years. Nor is there any evidence that these charges were "trumped up," A.R. 297; they were just unsuccessful—something the immigration authorities promptly realized. Nothing about § 1229(a) indicates that the government must *win* the charges listed in a notice to appear in order for the notice to appear to be valid. "[T]he determinative factor" is "not whether the charge with which [Gonzalez-Garcia] was originally charged was sustained or sustainable but rather" whether Gonzalez-Garcia received a cognizable notice to appear under section 1229(a). *Cheung v. Holder*, 678 F.3d 66, 71 (1st Cir. 2012); *accord Urbina*, 745 F.3d at 740; *Sagastume v. Holder*, 490 F. App'x 712, 716 (6th Cir. 2012). He did. The Board in the end permissibly determined that Gonzalez-Garcia has not been continuously physically present in the United States for ten years. In reaching this conclusion, we need not decide what might happen if the Department of Homeland Security issued a notice to appear without ever filing it with an immigration court. *Cf. Ordaz-Gonzalez v. Holder*, 533 F. App'x 752 (9th Cir. 2013) (remanding to the Board for consideration in light of *Camarillo*).

For these reasons, we dismiss the petition for review.