# Matter of Marcos Victor ORDAZ-Gonzalez, Respondent

*Decided July 24, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A notice to appear that was served on an alien but never resulted in the commencement of removal proceedings does not have "stop-time" effect for purposes of establishing eligibility for cancellation of removal pursuant to section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1) (2012).

FOR RESPONDENT: Andrew Knapp, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Peter R. Lee, Assistant Chief Counsel

AMICUS CURIAE: Russell Abrutyn, Esquire, Troy, Michigan[1]

BEFORE: Board Panel: GUENDELSBERGER and MALPHRUS, Board Members; GELLER, Temporary Board Member.

MALPHRUS, Board Member:

This case is before us on remand from the United States Court of Appeals for the Ninth Circuit for our reconsideration of the respondent's eligibility for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2006). Upon further consideration, we will sustain the respondent's appeal in part and remand the record to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who claims to have first entered the United States in 1990. Following an encounter with immigration officers, the respondent was served with a notice to appear on April 2, 1998, which advised him to appear before an Immigration Judge at a date, time, and location to be determined in the future. Removal proceedings were never commenced on the basis of that document because

---

[1] We acknowledge and appreciate the helpful briefs submitted by the parties and by amicus curiae representing the American Immigration Lawyers Association.

it was not filed with the Immigration Court in accordance with 8 C.F.R. § 3.14(a) (1998). On September 1, 2004, the Department of Homeland Security ("DHS") served the respondent with a second notice to appear and commenced the present proceedings on that basis.

The respondent applied for cancellation of removal under section 240A(b)(1) of the Act, claiming that his date of entry was in 1990 for purposes of establishing his continuous physical presence in the United States. In a decision dated December 12, 2006, the Immigration Judge ruled that pursuant to the "stop-time" rule in section 240A(d)(1), the respondent's period of continuous physical presence terminated when he was served with the 1998 notice to appear. The Immigration Judge therefore denied the application, holding that the respondent had not accrued the 10 years of continuous physical presence required by section 240A(b)(1)(A).

## II. ANALYSIS

To be eligible for cancellation of removal under section 240A(b)(1) of the Act, an alien must establish, among other things, that he has been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." Section 240A(b)(1)(A) of the Act. According to the "stop-time" rule, which is applicable to cancellation of removal under sections 240A(a) and (b)(1), "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 239(a) [of the Act, 8 U.S.C. § 1229(a) (2012)]." Section 240A(d)(1) of the Act; *see also* Illegal Immigration Reform and Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 304(a)(3), 110 Stat. 3009-546, 3009-595.[2] The issue before us is whether the "stop-time" rule is triggered when an alien is served with a notice to appear but is never placed in proceedings on the basis of that document.

To determine the scope of section 240A(d)(1) of the Act, we look first to the particular statutory language at issue. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). We must ascertain whether the statutory language has a plain and unambiguous meaning with respect to the issue at hand, which is "determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute

---

[2] Service of a notice to appear is not the only way to trigger section 240A(d)(1) of the Act. The "stop-time" rule applies to the earlier of the date the notice to appear was served or, if applicable, the date on which the alien committed an offense that renders him or her inadmissible or removable under certain sections of the Act.

as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340−41 (1997). However, where the specific question is not answered by the plain language of the statute, either because the language is silent or is susceptible to varying interpretations, "it is our duty to resolve any ambiguities and fill any statutory gaps in a reasonable manner." *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 508 (BIA 2008); *see also Negusie v. Holder*, 555 U.S. 511, 523 (2009).

The DHS contends that an alien's period of continuous physical presence under section 240A(b)(1) of the Act (or continuous residence under section 240A(a)) is terminated upon the service of *any* notice to appear, including the 1998 notice to appear in this case. According to the DHS, this argument is supported by the fact that the statute refers to "a" notice to appear (as opposed to "the" notice to appear) to describe the document that triggers the "stop-time" rule. *See Abdisalan v. Holder*, 774 F.3d 517, 524 (9th Cir. 2014) (noting that the "definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force 'a' or 'an'" (quoting *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002))).

While we recognize that the most natural reading of the indefinite article "a" in section 240A(d)(1) of the Act would be to refer to *any* notice to appear, its use is not dispositive of the issue before us. The use of the word "a" may be subject to more than one plausible interpretation depending on the language and context of a statute. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 173−75 (2004) (interpreting the phrase "a claim" to refer to the plaintiff's claim, as opposed to a claim by any person, in light of the context, history, and basic intent of the statute, as well as the consequences of a contrary interpretation); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002) (concluding that the phrase "a law or regulation" does not encompass every type of law, including common law, where the remaining statutory language and structure warrant a different reading). Further, the complete passage at section 240A(d)(1) refers to a "notice to appear under section 239(a)," which can be read as referring to the "written notice" that is provided "[i]n removal proceedings under section 240 [of the Act, 8 U.S.C. § 1229a (2012)]." Section 239(a)(1) of the Act. This could be interpreted to mean that a written notice is not "a notice to appear under section 239(a)" absent the actual commencement of proceedings. Under these circumstances, the statute is ambiguous with respect to whether a notice to appear that was served but not prosecuted "in removal proceedings" has "stop-time" effect in subsequent proceedings based on a different notice to appear. For the reasons discussed below, we conclude that it does not.

The DHS's argument that "a" means "any" is not the best reading of section 240A(d)(1), considering the typical posture of removal proceedings and the overall context of the statute. While not exclusively the case, proceedings ordinarily begin with a single notice to appear and end with an order of removal or a grant of some form of relief from removal. If the DHS wishes to amend the notice to appear, it may do so through the service of a Form I-261 (Additional Charges of Removability) "[a]t any time during the proceeding." 8 C.F.R. § 1240.10(e) (2015). There is generally no need for the DHS to initiate new proceedings on the basis of an additional, superseding notice to appear. We are not convinced that Congress anticipated the atypical situation involved here and intended to address it through the use of the indefinite article "a" before the phrase "notice to appear."

Our conclusion is especially apt when we consider the potential consequences of interpreting the statute in the manner advocated by the DHS. Affording "stop-time" effect to "any" notice to appear, regardless of whether proceedings were ever commenced on that basis, would potentially render an alien ineligible for relief on the basis of a charging document that was invalid or otherwise insufficient to support a removal charge as issued.[3] And if proceedings were never commenced, the alien would not have the opportunity to contest, or require the DHS to prove, the allegations and charges contained in the notice to appear. In fact, if we were to adopt the DHS's approach, even in situations where an alien was provided such an opportunity, a notice to appear that he or she has successfully defended against would nevertheless have "stop-time" effect in later proceedings.[4] We are not persuaded that Congress intended such far-reaching consequences.

---

[3] On the other hand, if the DHS amends a notice to appear by filing a Form I-261 *during the course of removal proceedings*, the notice to appear would continue to have "stop-time" effect. The statute affords "stop-time" effect to a single instrument—the notice to appear that is the subject of proceedings in which cancellation of removal is sought—irrespective of whether the allegations and charge(s) contained in that document are later substituted or supplemented during proceedings. *See Matter of Camarillo*, 25 I&N Dec. 644, 650−51 n.7 (BIA 2011).

[4] Of course, an alien's eligibility for cancellation of removal may still be affected by prior removal or deportation proceedings. Notably, an applicant for cancellation of removal under section 240A(a) or (b)(1) of the Act is ineligible for such relief if he or she is an alien "whose removal has previously been cancelled under [section 240A] or whose deportation was suspended under [former] section 244(a) [of the Act, 8 U.S.C. § 1254(a) (1994),] or who has been granted relief under [former] section 212(c) [of the Act, 8 U.S.C. § 1182(c) (1994),] as such sections were in effect before the date of the enactment of the Illegal Immigration Reform and Immigration Responsibility Act of 1996." Section 240A(c)(6) of the Act.

This approach is consistent with our decision in *Matter of Cisneros*, 23 I&N Dec. 668, 672 (BIA 2004), where we held that "the 'notice to appear' referred to in section 240A(d)(1) pertains only to the charging document served in the proceedings in which the alien applies for cancellation of removal." In so holding, we rejected the argument that service of a notice to appear in a prior proceeding that was prosecuted to completion should have "stop-time" effect in all future proceedings. We found the statutory language there, as here, to be ambiguous, and our analysis was guided by the fact that Congress' express intent for enacting the "stop-time" rule was to address a different issue. Specifically, this rule was designed to prevent "the prior practice of allowing periods of continuous physical presence to accrue" during the pendency of removal proceedings, which allowed aliens to employ dilatory tactics in proceedings in order to "buy time" to establish eligibility for cancellation of removal. *Id.* at 670. We found that this purpose would not be furthered by applying the "stop-time" rule to an alien who was served a notice to appear in an earlier, unrelated proceeding. Such an individual is not in a position to "buy time" until after the DHS initiates removal proceedings on the basis of a subsequent charging document. *See id.*

This rationale applies with equal force to an alien who is served a notice to appear but is never placed in removal proceedings on that basis. In fact, the decision to commence removal proceedings lies in the sole discretion of the DHS. *See* 8 C.F.R. § 1003.14(a); *see also, e.g.*, *Cortez-Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir. 2001); *Matter of Lujan-Quintana*, 25 I&N Dec. 53, 56 (BIA 2009). We therefore find strong support in *Matter of Cisneros* for the interpretation we adopt here.

We addressed a related, but different, "stop-time" issue in *Matter of Camarillo*, 25 I&N Dec. 644 (BIA 2011). In that case, we considered whether section 240A(d)(1) of the Act is triggered as of the date of service of the notice to appear, even if the time and place of the hearing is not specified, or at some later date, such as when a subsequent notice of hearing is sent by the Immigration Court. *Id.* at 647−51. Our discussion of the "stop-time" rule was therefore in the context of "*when* the notice to appear is effective to terminate the accrual of continuous residence [or physical presence]." *Id.* at 650 (emphasis added). Here, by contrast, we are addressing a different ambiguity in the statute, namely, whether *a particular* notice to appear has "stop-time" effect. While both of these issues arise in the context of the same statute, they present different questions of statutory interpretation, which must be evaluated based on the language, structure, and context of the provision in regard to the specific issue before us.

With respect to the issue of timing (or *when* the "stop-time" rule takes effect), *Matter of Camarillo* considered the interrelationship between the service of a notice to appear and the required advisals under section 239(a)(1)(G)(i) of the Act. We noted that while section 239(a)(1)(G)(i) requires an alien to be advised of the time and location the proceedings will take place, such information is often provided after service of a notice to appear, as contemplated by both the Act and the regulations. *Matter of Camarillo*, 25 I&N Dec. at 647−48; *see also Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009) (explaining that the DHS "frequently serves [notices to appear] where there is no immediate access to docketing information" (quoting *Dababneh v. Gonzales*, 471 F.3d 806, 809 (7th Cir. 2006))). We therefore concluded that section 240A(d)(1)'s reference to a notice to appear "under section 239(a)" is merely definitional in nature. It does not alter the time when an alien's period of continuous residence or physical presence is deemed to end, which the structure and legislative history of the statute support as being the date the notice to appear is served.[5]

This is consistent with the approach we adopt here. Section 240A(d)(1)'s reference to section 239(a) of the Act is definitional in that it specifies what "a notice to appear" refers to in section 240A(d)(1). *Matter of Camarillo*, 25 I&N Dec. at 647, 650. It refers to the written notice that is provided to an alien "[i]n removal proceedings under section 240." Section 239(a)(1) of the Act. Such reference answers the question presented here: whether the "stop-time" rule applies to a notice to appear that is properly served but not used to commence proceedings. It does not, however, alter the time when an alien's period of continuous residence or continuous physical presence is deemed to end. Therefore, we continue to interpret section 240A(d)(1) as terminating an alien's period of continuous residence or physical presence as of the date a notice to appear is served, even if the document does not contain the time and place of the hearing, provided that proceedings are actually initiated on that basis.[6]

---

[5]   We stated that "the commencement of proceedings is a separate issue from the service of the notice to appear. The application of the 'stop-time' rule is, by statute, based on service of the notice to appear, not the commencement of proceedings . . . ." *Matter of Camarillo*, 25 I&N Dec. at 650. However, this statement was made in in the context of the typical situation where the DHS issues and proceeds on a single notice to appear. We were not considering the situation where, as here, the original notice to appear was issued but never prosecuted in removal proceedings.

[6]   The courts of appeals that have addressed *Matter of Camarillo* have deferred to it as a reasonable interpretation of the ambiguous statutory language in section 240A(d)(1) of the Act. *Guaman-Yuqui v. Lynch*, 786 F.3d 235, 241 (2d Cir. 2015); *Gonzales-Garcia v. Holder*, 770 F.3d 431, 433−35 (6th Cir. 2014); *Yi Di Wang v. Holder*, 759 F.3d 670, 674−75 (7th Cir. 2014); *Urbina v. Holder*, 745 F.3d 736, 740 (4th Cir. 2014); *see also*

(continued . . .)

*Matter of Cisneros*, *Matter of Camarillo*, and this decision together interpret section 240A(d)(1) as ending, or "stopping," an alien's period of continuous residence or continuous physical presence on the date a notice to appear is served, provided that such document is the basis for the proceedings in which cancellation of removal is being sought. This reading gives meaning to the statute as a whole and is consistent with the Act in its entirety, the nature of removal proceedings in general, and Congress' goal in enacting section 240A(d)(1) of the Act. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (explaining that in determining the meaning of a statute, a court must "interpret the statute 'as a symmetrical and coherent regulatory scheme' and 'fit, if possible, all parts into an harmonious whole" (citations omitted)).

## III. CONCLUSION

The language and structure of section 240A(d)(1) of the Act do not support giving "stop-time" effect to a notice to appear that was served on an alien but was never used to commence proceedings. Consequently, the 1998 notice to appear, although properly served, did not terminate the respondent's continuous physical presence for purposes of his application for cancellation of removal under section 240A(b)(1) of the Act. Accordingly, his appeal will be sustained in part. The record will be remanded to give the parties an opportunity to present additional arguments and evidence, including testimony, as the Immigration Judge deems appropriate.[7]

**ORDER:** The respondent's appeal will be sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

*O'Garro v. U.S. Att'y Gen.*, 605 F. App'x 951 (11th Cir. 2015) (deferring, in an unpublished decision, to our interpretation in *Matter of Camarillo*); *Soto v. Holder*, 736 F.3d 1009, 1011−12 (1st Cir. 2013) (adopting a similar approach without discussing *Matter of Camarillo*).

[7] On remand, the Immigration Judge should determine whether the respondent established that he first entered the United States in 1990 and make specific factual findings regarding the respondent's date of entry.