**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE MARIO MOSCOSO-CASTELLANOS, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 12-72693 Agency No. A095-663-275 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted September 3, 2015[*]
Pasadena, California

Filed October 13, 2015

Before: Susan P. Graber and Paul J. Watford, Circuit
Judges, and John R. Tunheim,[**] Chief District Judge.

Opinion by Judge Graber

---

[*] The panel unanimously concludes that this case is suitable for decision
without oral argument. Fed. R. App. P. 34(a)(2).

[**] The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

## SUMMARY[***]

### Immigration

The panel denied in part and dismissed in part Jorge Moscoso-Castellanos' petition for review of the Board of Immigration Appeals' decision finding him statutorily ineligible for cancellation of removal for failure to accrue the requisite period of continuous physical presence by the time he was served with the Notice to Appear ("NTA") in his removal proceeding.

Applying *Chevron* deference, the panel found reasonable the BIA's construction of 8 U.S.C. § 1229b(d)(1) in *Matter of Camarillo*, 25 I. & N. Dec. 644 (BIA 2011), that the failure of an NTA to specify the date and location of a removal hearing has no effect on the stop-time rule. The panel denied Moscoso-Castellanos' petition because he accrued only eight of the required ten years of presence at the time he was served, and addressed Moscoso-Castellanos' other arguments in an unpublished memorandum disposition filed concurrently with the opinion.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Wayne Spindler, Tarzana, California, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Ada E. Bosque, Senior Litigation Counsel, and Erik R. Quick, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

GRABER, Circuit Judge:

Petitioner Jorge Mario Moscoso-Castellanos, a native and citizen of Guatemala, petitions for review of an adverse decision of the Board of Immigration Appeals ("BIA"). In this published opinion, we consider only his argument that the notice to appear in removal proceedings ("NTA") did not stop his accrual of continuous physical presence because it did not include the time and date of his removal hearing. We address his other arguments in an unpublished memorandum disposition filed concurrently with this opinion. We deny the petition in part and, for reasons explained in the memorandum disposition, dismiss in part.

An applicant for cancellation of removal must prove that he or she has been physically present in the United States for 10 years. 8 U.S.C. § 1229b(b)(1)(A). The relevant 10-year period generally ends on the date of the application for cancellation of removal. *Id.* But service of an NTA cuts off the accrual of continuous presence, under a provision known as the "stop-time" rule. *Id.* § 1229b(d)(1).

Petitioner entered the United States in approximately April 1997.[1] He was served with an NTA on April 7, 2005. That NTA provided that the removal hearing would be held "on a date to be set at a time to be set." On April 14, 2005, Petitioner received a hearing notice providing him with the date and time of his hearing, which he attended on April 20, 2005. He initially filed an application for adjustment of status as a derivative beneficiary of his wife. Six years later, on August 24, 2011, he filed an application for cancellation of removal.

The immigration judge found Petitioner statutorily ineligible for cancellation of removal because only eight years had elapsed between his arrival in the United States (in 1997) and service of the NTA (in 2005). Relying on its own decision in *In re Camarillo*, 25 I. & N. Dec. 644 (B.I.A. 2011), the BIA affirmed.

Petitioner argues that *In re Camarillo* does not control this case and that he accrued continuous physical presence until at least 2008, when a corrected NTA was served, or until 2011, when he applied for cancellation. He relies on *Garcia-Ramirez v. Gonzales*, 423 F.3d 935 (9th Cir. 2005) (per curiam), for the proposition that an NTA triggers the stop-time rule only if it includes the date and location of the removal hearing. In *Garcia-Ramirez*, the petitioner received

---

[1] The NTA charged that Petitioner arrived in the United States "on or about April 1997." In his application for cancellation of removal, Petitioner claimed that he had entered in March 1997. Before the immigration judge, Petitioner testified that he had arrived in October 1998. In its decision, the BIA stated that Petitioner arrived "on or about April 1997." The minor discrepancies do not affect our analysis of the legal issue discussed in text because it is undisputed that Petitioner was in the country for less than 10 years before receiving the NTA.

an NTA that did not specify the date or location of the removal hearing. *Id.* at 937 n.3. We held that the petitioner's accrual of physical presence did not stop until she was served a second NTA that included the missing hearing information.**[2]**

We are bound to defer to an agency's reasonable interpretation of an ambiguous statute even if that interpretation conflicts with our earlier interpretation of the same provision. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984–85 (2005). The first step in our inquiry is to determine whether the statute is ambiguous. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

The stop-time rule provides that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1). Section 1229(a)(1), in turn, provides that an NTA "shall be given . . . to the alien . . . specifying the following . . . ." A list of statutory requirements follows,

---

**[2]** It is possible to read *Garcia-Ramirez* in the way Petitioner urges—to hold that only a single NTA that strictly complies with all the statutory requirements of 8 U.S.C. § 1229(a)(1) triggers the stop-time rule. But we think that it is more sensible to read *Garcia-Ramirez* as holding that a petitioner receives a statutorily sufficient NTA whenever he or she has received some combination of documents that meet all the § 1229(a)(1) requirements. Under that reading, an NTA that omits the time and place of the hearing *plus* a later hearing notice that includes those details—taken together—would trigger the stop-time rule. That reading is consistent with our later decision in *Popa v. Holder*, 571 F.3d 890, 895–96 (9th Cir. 2009), in which we held, without discussing the stop-time rule, that such a two-step notice procedure complies with the statute. But, because we hold that we are bound to defer to the BIA's interpretation of the statute, we need not decide which is the correct reading of *Garcia-Ramirez*.

including requirements that the NTA specify the charges, provide information about the right to counsel and a list of attorneys, and provide the date and location of the hearing. *Id.* § 1229(a)(1)(D), (E), (G)(i). The section goes on to describe procedures for providing notice of changes in the date or location of a hearing. *Id.* § 1229(a)(2).

As the BIA stated in *In re Camarillo*, the statute could be read to require that, in order to trigger the stop-time rule, the NTA must be fully compliant with the listed statutory requirements. 25 I. & N. Dec. at 647. But we agree with the BIA that it is "equally plausible" to read the reference as

> simply definitional, that is, it indicates what the words "notice to appear" refer to. Read this way, [§ 1229b(d)(1)] merely specifies the document the [Department of Homeland Security] must serve on the alien to trigger the "stop-time" rule and does not impose substantive requirements for a notice to appear to be effective in order for that trigger to occur. Thus, the statutory language at issue is ambiguous on this point.

*Id.* Finally, one might interpret the statute to mean that an NTA in combination with one or more other documents (such as a hearing notice) will meet all the statutory requirements and trigger the stop-time rule. *Id.* at 648. Because the statute is susceptible to several interpretations, we hold, at *Chevron* step one, that the statute is ambiguous.

At step two, we must defer to an agency's reasonable interpretation of a silent or ambiguous statute. *Chevron*, 467 U.S. at 843. The BIA identified a number of reasons for

its holding that service of the NTA triggers the stop-time rule even if the NTA does not include the date and location of the hearing. First, it noted that § 1229(a) is itself partly definitional; "it defines 'the written notice' that is given to the alien to initiate removal proceedings, which it says is referred to as a 'notice to appear.'" *In re Camarillo*, 25 I. & N. Dec. at 647. Second, the BIA noted that, although only § 1229(a)(*1*) lists the statutory requirements for the NTA, the cross-reference is to the entirety of § 1229(*a*). *Id.* Significantly, § 1229(a) also discusses how to provide notice of *changes* in the time or location of the hearing. *Id.* at 647–48. Third, the BIA noted that the governing regulation on this point "expressly provides that the time, place, and date of an initial removal hearing shall be provided in the notice to appear only 'where practicable.'" *Id.* at 648 (quoting 8 C.F.R. § 1003.18(b)). Fourth, the BIA noted that, although the Department of Homeland Security issues the NTA, the immigration court retains control over scheduling and issues a notice of hearing. *Id.* The BIA reasoned that the immigration court's issuance of a notice of hearing could not be a part of the "notice to appear" referred to in the statute because the court does not have the authority to issue an NTA. *Id.* at 650.

Finally, the BIA consulted legislative history and found evidence that Congress intended the commencement of removal proceedings "to break an alien's continuous residence or physical presence." *Id.* The BIA concluded by stating that "[a] primary purpose of a notice to appear is to inform an alien that the Government intends to have him or her removed from the country, but the inclusion of the date and time of the hearing is not necessary for the Government's intention in this regard to be conveyed." *Id.*

We hold that the BIA's construction of the statute in *In re Camarillo* is reasonable, and we defer to that construction. In so doing, we join several of our sister circuits, which have reached the same conclusion. *Guaman-Yuqui v. Lynch*, 786 F.3d 235, 238–40 (2d Cir. 2015) (per curiam); *Gonzalez-Garcia v. Holder*, 770 F.3d 431, 433–35 (6th Cir. 2014); *Yi Di Wang v. Holder*, 759 F.3d 670, 673–75 (7th Cir. 2014); *Urbina v. Holder*, 745 F.3d 736, 739–40 (4th Cir. 2014).

Petitioner stopped accruing physical presence on April 7, 2005, when he was served the NTA. It is undisputed that, on that date, he had accumulated only eight years' physical presence in the United States. The BIA correctly determined that he was statutorily ineligible for cancellation of removal.

Petition **DENIED** in part and **DISMISSED** in part.