IMG-101                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1370
_____

CRISTOBAL CALIX,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A037-115-719)
Immigration Judge:  Honorable Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011
Before:  MCKEE, Chief Judge, SMITH AND GARTH, Circuit Judges

(Opinion filed:  April 14, 2011 )
_____

OPINION
_____

PER CURIAM

Cristobal Calix petitions for review of a decision of the Board of Immigration

Appeals (BIA).  For the reasons below, we will deny the petition for review.

Calix, a citizen of Honduras, entered the United States in 1976.  In 1980, he

became a lawful permanent resident. In 2004, Calix applied for naturalization. He admitted at his interview that he had voted in the United States. In 2008, Calix was charged as removable as an alien who voted in violation of any federal, state, or local law. See 8 U.S.C § 1227(a)(6). The charge alleged that Calix voted in the November 2004 election. A.R. at 374.

Calix contested removability: he admitted the factual allegation—that he had voted in the November 2004 election—but denied the charge of removability. A.R. at 130. He applied for cancellation of removal. After a hearing, the IJ found Calix removable. After balancing the negative and positive factors, the IJ exercised his discretion to deny Calix's application for cancellation of removal. The BIA dismissed the appeal, and Calix filed a timely petition for review.

Removability

Calix argues that the BIA erred in upholding the IJ's denial of his motion to terminate the removal proceedings because the Department of Homeland Security (DHS) failed to follow its own procedures. He cites to a DHS internal operations policy memorandum that addresses naturalization applications of aliens who have voted unlawfully. A.R. at 279-88. He contends that according to the memorandum, the DHS agent must evaluate certain circumstances of the alien's voting before determining that the alien voted unlawfully. Pursuant to 8 U.S.C. § 1252(g), we lack jurisdiction to hear any claim by an alien arising from the Attorney General's decision to commence removal

2

proceedings. Thus, we may not review the IJ's denial of the motion to terminate.

Next, Calix challenges the BIA's upholding of the IJ's finding that Calix violated a New Jersey statute by knowingly voting as a non-citizen.[1] We have jurisdiction under 8 U.S.C. § 1252. The government has the burden of proving removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3). We review the factual findings on which the BIA relied under the substantial evidence standard. Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). These findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The IJ noted that Calix signed a voter registration form that indicated that he was a United States citizen. A.R. at 84, 247. In response to Calix's argument that he did not understand English at the time, the IJ observed that the form contained a statement in Spanish. A.R. at 84, 247.[2] The IJ cited to Calix's testimony that he voted in 2004 as well as his voting history from 1984 to 1996. The IJ concluded that the government had

---

[1] N.J. Stat. Ann. 19:34-1 provides:
> Any person who shall cause or procure his name to be registered in more than one election district, or shall pause and procure his name or that of any other person to be registered, knowing that he or such other person is not entitled to vote in the election district wherein such registry is made at the next election to be held therein, shall be punished for each such offense and shall be guilty of a crime of the third degree.

[2] Calix testified that one of the people who registered him to vote spoke to him in

3

proved willful and knowing actions. On appeal, the BIA noted that Calix had signed the voter registration form in which he indicated that he was a naturalized citizen and had voted in at least fourteen elections.[3] The BIA agreed with the IJ that Calix had violated the New Jersey statute because he voted while knowing that he did not have the authority to do so. A.R. at 4.

Calix argues that he was not aware that there was a citizenship requirement to vote. He explains that he was visited by individuals in 1984 who informed him that he was eligible to vote. He states that he did not know that he had to be a citizen to vote. He asserts that he immediately withdrew his name from the voting rolls upon realizing he was ineligible.

Calix was charged with removability for violating New Jersey law by voting on November 2, 2004. Calix's application for naturalization was dated January 8, 2004. A.R. at 353. On the application, he initially checked the boxes for "no" in response to the questions of whether he had ever registered to vote or voted. A.R. 358. At his interview on October 26, 2004, he corrected his application after admitting that he had registered to vote and had voted. A.R. 358, 362. In his brief before the BIA, he acknowledged that the officer at the naturalization interview told him that only citizens could vote. A.R. at 19, 185. However, Calix admits to voting on November 2, 2004. We conclude that

_____

Spanish.

[3] At the hearing, Calix initially testified that he voted only once. When questioned about a voting record which indicated that he voted multiple times, Calix

4

substantial evidence supports the finding that Calix knowingly violated New Jersey law by voting on that date.[4]

Cancellation of Removal

The IJ exercised his discretion to deny Calix's application for cancellation of removal. We have jurisdiction to review constitutional claims and questions of law but not factual or discretionary determinations related to cancellation of removal. Mendez-Moranchel v. Ashcroft, 338 F.3d 176 (3d Cir. 2003); 8 U.S.C. § 1252(a)(2)(D). Because the IJ denied cancellation as a matter of discretion, we need not address Calix's argument that the IJ incorrectly applied the stop-time rule and determined that Calix was ineligible for cancellation. Calix argues that the BIA violated his due process rights with its erroneous conclusion that he knowingly violated the New Jersey voting statute and its failure to consider the hardship removal would cause for his family. However, he does not explain how he was denied notice or an opportunity to present his case. He simply challenges the IJ's discretionary denial of cancellation of removal and repeats his arguments regarding the finding that he knowingly violated the New Jersey voting statute. See Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007) ("Recasting challenges to factual or discretionary determinations as due process or other

---

stated that he didn't remember. A.R. at 162-66, 172-73.

[4] Calix also contends that the IJ violated his due process rights by finding him removable because the State of New Jersey has not found that he violated the statute. He also argues that the finding encroaches on New Jersey's sovereignty. These arguments are meritless.

5

constitutional claims is clearly insufficient to give this Court jurisdiction . . . ")

Finally, Calix argues that by upholding the IJ's finding that Calix had repeatedly violated the New Jersey statute by voting unlawfully, the BIA erred by requiring a showing of rehabilitation. While the IJ stated that he relied on the fact that Calix had repeatedly voted to deny cancellation as a matter of discretion, there is nothing in his opinion which indicates that he required a showing of rehabilitation.

For the above reasons, we will deny the petition for review.