**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1084**

GUSTAVO URBINA,

                 Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

                 Respondent.

**No. 13-1465**

GUSTAVO URBINA,

                 Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

                 Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  December 10, 2013          Decided:  March 17, 2014

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

Petition for review denied in part and dismissed in part by published opinion.  Judge Diaz wrote the opinion, in which Judge Motz and Judge Agee joined.

---

**ARGUED**: Philip A. Eichorn, PHILIP EICHORN COMPANY, LPA, Cleveland, Ohio, for Petitioner. Jennifer Paisner Williams, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Stuart F. Delery, Acting Assistant Attorney General, David V. Bernal, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

DIAZ, Circuit Judge:

The Immigration and Nationality Act permits the Attorney General to cancel removal of certain aliens. See 8 U.S.C. § 1229b(b). Although the Attorney General has discretion in such matters, the statute requires the alien to have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." Id. § 1229b(b)(1)(A). In this case, Gustavo Urbina, a native and citizen of Nicaragua, argues that he has met that requirement and is thus statutorily eligible for cancellation of removal. The Immigration Judge and the Board of Immigration Appeals found otherwise. For the reasons that follow, we deny in part and dismiss in part Urbina's petition for review.

I.

Urbina entered the United States on October 4, 2000, on a tourist visa. He overstayed its expiration. In December 2009-- shortly before the statute's ten years would accrue--the Department of Homeland Security served Urbina with a notice to appear, charging him with having entered the United States without being admitted or paroled, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). The government apparently based that charge on Urbina's own representations in his 2003, 2005, and 2006

3

applications for temporary protected status, which asserted that he had entered the country in 1998--an entry date the government was unable to verify. The notice to appear did not specify a date and time for the hearing, but instead noted they were "to be set." A.R. 184.[1]

Before an Immigration Judge, Urbina admitted that he was not an American citizen. He did not argue that he was in the United States legally, but asserted that he had entered legally in October 2000. Thus, he explained, the charge against him was incorrect. The IJ asked Urbina to file a copy of his passport showing his October 2000 entry. Urbina, in turn, requested that the government file an I-261 form at the next hearing: this form would swap out the original charge on the notice to appear (illegal entry) for the factually correct charge (illegal presence, pursuant to 8 U.S.C. § 1227(a)(1)(B)). The IJ responded, "That's why I'm going to have you file [a copy of the passport], so the Government can come to court at the next master calendar with an I-261 that you can plead to." A.R. 99.

Urbina then filed a motion to terminate the original charge, attaching a copy of his passport and visa. The IJ denied the motion without a written opinion. When the parties

---

[1] References to the "A.R." cite to the Administrative Record. The "S.A.R." is the Supplemental Administrative Record.

4

next appeared before the IJ, DHS had not yet prepared the I-261 form. Counsel for the government promised to "independently verify" Urbina's 2000 entry and then file the amended charge. A.R. 106. When Urbina produced an original copy of the passport, however, the IJ was "satisfied that that's [the October 2000 entry] in fact what the passport says." A.R. 106. The IJ continued the hearing on the understanding that DHS would most likely amend the charge.

DHS did amend the charge, alleging that Urbina was removable as an alien who overstayed his period of authorized presence. In response, Urbina asserted that his original notice to appear--which stopped the accrual of the requisite ten years' continuous physical presence, see 8 U.S.C. § 1229b(d)(1)(A)--was invalid. Thus, he contended, only the newly substituted charge stopped the clock, and it did so after he had reached the ten-year mark, making him eligible for cancellation of removal.

The IJ disagreed, and the Board of Immigration Appeals dismissed Urbina's appeal. Urbina filed a petition for review in this court while simultaneously filing a motion to reconsider with the BIA. The BIA denied the motion to reconsider and Urbina petitioned for our review of that denial. The two petitions for review are consolidated before us.

II.

As he did before the IJ and the BIA, Urbina contends that the original notice to appear was invalid and thus did not stop the accrual of the ten-year statutory period. In the alternative, he argues that the IJ erred in denying his motion to terminate and in continuing the proceedings to allow DHS to amend the charge against him. Urbina further asserts that DHS did not have the authority to promulgate the regulation permitting such an amendment. He also raises a procedural due process claim and challenges the BIA's denial of his motion to reconsider. We consider these arguments in turn.

A.

We begin with Urbina's argument that his original notice to appear was invalid. Urbina concedes that a valid notice to appear stops the accrual of continuous physical presence required for cancellation of removal. See 8 U.S.C. § 1229b(d)(1)(A) (explaining that the relevant time ends "when the alien is served a notice to appear under section 1229(a) of this title"). Urbina argues, however, that his original notice to appear was invalid and thus did not activate that stop-time rule. He primarily contends that the initial notice's incorrect charge renders it invalid. See id. § 1229(a)(1)(D) (requiring specification of "[t]he charges against the alien and the statutory provisions alleged to have been violated"). He also

observes that the notice did not include the specific date and time of the hearing, as required by 8 U.S.C. § 1229(a)(1)(G)(i). See id. ("In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . specifying the following: . . . [t]he time and place at which the proceedings will be held."). We find Urbina's position unpersuasive.

After the IJ's ruling, but before deciding Urbina's appeal, the BIA issued a precedent decision holding that the stop-time rule does not require that the notice to appear include the date and time of a hearing. See In re Camarillo, 25 I. & N. Dec. 644 (B.I.A. 2011). In that case, the BIA determined that the relevant statutory language is ambiguous: it says only that the stop-time rule is triggered "when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1)(A). The BIA reasoned that this provision could be read in two ways. It might require substantive compliance with all requirements of § 1229(a)--the reading Urbina proposes here. Or, it could simply specify the document as a definitional matter. 25 I. & N. Dec. at 647.

The BIA resolved that ambiguity, deciding "that the key phrase is 'served a notice to appear.'" Id. Thus, "the best reading of the statute as a whole is that Congress intended the

7

phrase 'under section [1229](a)' after 'notice to appear' to specify the document the DHS must serve on the alien to trigger the 'stop-time' rule." Id. The BIA further observed that the stop-time provision refers broadly to the entirety of § 1229(a), which includes procedures for changing the date and time of a hearing. See id. at 647–48; see also 8 U.S.C. § 1229(a)(2).

Finally, the BIA reasoned that the Act's legislative history evinced a congressional intent to prevent aliens from accruing time that would undermine deportation proceedings already in progress. See 25 I. & N. Dec. at 649–50. According to the BIA, "[a] primary purpose of a notice to appear is to inform an alien that the Government intends to have him or her removed from the country, but the inclusion of the date and time of the hearing is not necessary for the Government's intention in this regard to be conveyed." Id. at 650.

We analyze the BIA's interpretation in accordance with Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under that precedent, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the

agency's answer is based on a permissible construction of the statute." Id. at 843.

As to the first step, we agree with the BIA that the relevant statutory provision is ambiguous. Both the BIA's and Urbina's readings are plausible in light of the text. And because the BIA's interpretation in Camarillo is plausible--for the reasons the BIA gave in that case--it merits deference under the second step. Thus, despite the missing date and time, Urbina's notice to appear was valid, and triggered the stop-time rule.

We recognize that Camarillo does not directly address whether its analysis would apply to incorrect charges as well as missing dates and times. In a footnote, however, the BIA suggested that "there is no reason to conclude that Congress would have intended an alien to be able to accrue time between service of the notice to appear and service of an I-261 [providing the "charges against the alien"], which may occur much later and, in fact, '[a]t any time during the proceeding.'" 25 I. & N. Dec. at 650 n.7 (quoting 8 C.F.R. § 1240.10(e)).

We defer to this reasonable interpretation, although we note that the notice to appear in this case substantially

complied with the requirements of § 1229(a).[2] This is hardly a case, moreover, where DHS brought trumped-up charges for the purpose of stopping the clock; indeed, DHS initially relied on Urbina's own statements as to when he entered the country. We do not decide today whether a more egregious case might warrant a different result.

We thus deny this portion of Urbina's petition.

### B.

Urbina next argues that the IJ improperly denied his motion to terminate the removal proceedings. He believes that if the IJ had terminated the case, rather than continuing it so DHS could amend the charge against him, the stop-time rule would have been triggered only by the new charge--and after the ten years had accrued. But in asking DHS to file the I-261 form, the IJ did precisely what Urbina had originally requested. See A.R. 99 ("We would just be seeking then an I-261 that would reflect the proper change."). Moreover, Urbina did not object to the IJ's decision to continue the case. See A.R. 108, 110-11. We find no abuse of discretion on these facts. See Onyeme

---

[2] Except for the deficiencies Urbina complains of here, the notice to appear included the elements required by § 1229(a), such as the nature of the proceedings against Urbina, the legal authority under which the proceedings were conducted, Urbina's right to be represented by counsel, and the consequences of failure to provide current contact information. Compare 8 U.S.C. § 1229(a)(1), with J.A. 185–86.

v. U.S. I.N.S., 146 F.3d 227, 231 (4th Cir. 1998) ("[W]hen reviewing the BIA's decision upholding the IJ's discretionary action, we uphold the BIA's decision unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, e.g., invidious discrimination against a particular race or group." (internal quotation marks and alterations omitted)). We therefore reject this claim of error.

C.

Urbina further complains that the amended charge itself is invalid. In particular, he asserts that DHS did not have authority to promulgate 8 C.F.R. § 1240.10(e), which permits DHS to amend charges. See id. ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by [DHS] in writing."). Urbina reasons that the Immigration and Nationality Act clearly provides for changes to the time and date of proceedings on a notice to appear, see 8 U.S.C. § 1229(a)(2), but does not contain a similar provision for amending charges. Thus, he contends, the regulation is invalid.

But "[b]ecause Congress expressly delegated to the Attorney General the authority to establish such regulations as are necessary for carrying out the INA, the challenged regulation must be given controlling weight unless it is arbitrary,

11

capricious, or manifestly contrary to the statute." Suisa v. Holder, 609 F.3d 314, 319 (4th Cir. 2010) (internal quotation marks, citations, and alterations omitted).  Although the statute is silent regarding the amendment of charges, it is sensible to allow DHS discretion to make changes as it acquires more information.  Because the regulation is hardly arbitrary or capricious, we deny this part of Urbina's petition.

## D.

Next, Urbina contends that the IJ violated his procedural due process right by pretermitting his application for cancellation of removal.  This is prejudicial, he argues, because of "open factual issues" regarding his eligibility for relief: that is, whether the court should measure the ten years from Urbina's purported January 1998 entry date, rather than the October 2000 entry.  Petitioner's Br. at 33.

Given Urbina's earlier contention that DHS should not have given the 1998 entry date any credence, this argument strikes us as dubious at best.  In any event, we lack jurisdiction to review it because Urbina failed to raise the question before the BIA.  "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."  8 U.S.C. § 1252(d)(1).  "We have previously interpreted [§ 1252(d)(1)] as a jurisdictional bar." Massis v. Mukasey, 549 F.3d 631, 638 (4th Cir. 2008).  Because

12

Urbina could have raised this claim before the BIA but chose not to, we dismiss this part of his petition.

E.

Finally, Urbina asks that we reverse the BIA's denial of his motion to reconsider.  We review such a denial for abuse of discretion.  See Narine v. Holder, 559 F.3d 246, 249 (4th Cir. 2009); see also Sadhvani v. Holder, 596 F.3d 180, 182 (4th Cir. 2009) ("The BIA's denial of a motion to reopen is reviewed with extreme deference . . . ." (internal quotation marks omitted)). "[W]e can reverse only if the Board acted arbitrarily, irrationally, or contrary to law."  Narine, 559 F.3d at 249 (internal quotation marks and citations omitted).

Urbina focuses on the BIA's assertion that "the inaccuracies in the original [notice to appear] were based upon the respondent's fraudulent statements in his previous sworn applications for temporary protected status."  S.A.R. 4.  Urbina first complains that his statements were not in the record--which is clearly incorrect.  See A.R. 133, 138, 142, 146.  More colorably, he argues that the BIA overstepped its authority by finding the statements "fraudulent," as the IJ never made such a finding itself.

As a result, Urbina contends, the BIA has failed to follow its own regulations.  See 8 C.F.R. § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts such as

13

current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals."). This failure, he argues, creates reversible error under the Accardi doctrine. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) (objecting to the BIA's failure to follow its valid regulations).

The BIA's decision, however, makes clear that its reliance on Camarillo serves as the primary basis for denial of the motion for reconsideration. Because we have determined that deference to Camarillo is appropriate, we need not reach the BIA's alternative rationale regarding fraud.[3] We thus deny this portion of Urbina's petition.

III.

For the foregoing reasons, Urbina's petition is

<u>DENIED IN PART</u>
<u>AND DISMISSED IN PART.</u>

---

[3] At oral argument, the government explained that the BIA's characterizations of fraud would not be held against Urbina in any future proceeding. We have every expectation that DHS and the BIA will abide by this representation.