Guaman-Yuqui v. Lynch

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2014

(Argued: May 6, 2015    Decided: May 19, 2015)

Docket No. 14-200-ag

———————

KLEVER BOLIVAR GUAMAN-YUQUI,

*Petitioner*,

— v. —

LORETTA E. LYNCH, United States Attorney General,

*Respondent*.[*]

———————

B e f o r e:

LEVAL, LYNCH, and LOHIER, *Circuit Judges*.

———————

———————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.  See Fed. R. App. P. 43(c)(2).

Petitioner seeks review of an order of the Board of Immigration Appeals determining that his receipt of a notice to appear that failed to specify the date and time of his initial hearing sufficed to trigger the stop-time rule under 8 U.S.C. § 1229b(d)(1). Because the BIA's determination that a notice to appear need not include the date and time of the initial hearing in order to trigger the stop-time rule is a permissible construction of the Immigration and Nationality Act, the petition for review is DENIED.

––––––––––––

MICHAEL P. DIRAIMONDO (Marialaina L. Masi and Stacy A. Huber, *on the brief*), DiRaimondo & Masi, LLP, Melville, New York, *for Petitioner* Klever Bolivar Guaman-Yuqui.

MELISSA KATHERINE LOTT, Trial Attorney (Leslie McKay, Assistant Director, Stuart F. Delery, Assistant Attorney General, and M. Jocelyn Lopez Wright, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent* Loretta E. Lynch, United States Attorney General.

––––––––––––

PER CURIAM:

Klever Bolivar Guaman-Yuqui ("Guaman") seeks review of an order of the Board of Immigration Appeals ("BIA") determining that his receipt, within ten

2

years of his entry into the United States, of a notice to appear that failed to specify the date and time of his initial hearing sufficed to trigger the stop-time rule under 8 U.S.C. § 1229b(d)(1). Because the BIA's determination that a notice to appear need not include the date and time of the initial hearing to trigger the stop-time rule is a permissible construction of the Immigration and Nationality Act ("INA") entitled to Chevron deference from this Court, we deny the petition for review.

**BACKGROUND**

Guaman is a native and citizen of Ecuador who entered the United States without inspection on January 14, 2001. On March 15, 2010, agents of the Department of Homeland Security ("DHS") personally served Guaman with a notice to appear charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. The notice indicated that Guaman was to appear before an Immigration Judge "on a date to be set at a time to be set."

On April 30, 2010, the Immigration Court attempted to mail Guaman a notice of hearing. Guaman did not appear at the proceedings and was ordered removed *in absentia*. Several months later, Guaman filed a motion to reopen, stating that he never received notice of the hearing. Based on evidence that the

3

notice had been mailed to an incorrect address and returned as undeliverable, the BIA reopened Guaman's proceedings. In September of 2011, more than ten years after Guaman's entry, the Immigration Court served Guaman with a new notice of hearing providing a date and time for his appearance.

At a series of subsequent hearings held before an Immigration Judge ("IJ"), Guaman applied for cancellation of removal under 8 U.S.C. § 1229b, presenting several witnesses to testify that his removal to Ecuador would cause undue hardship to his parents, both lawful permanent residents. At the conclusion of the proceedings, the IJ denied Guaman's application without reaching the merits of his hardship claim, finding that Guaman was ineligible for relief because he had failed to establish ten years of continuous physical presence in the United States. Because Guaman had entered the United States on January 14, 2001, had received the notice to appear on March 15, 2010, and had been mailed a notice of hearing on April 30, 2010, the IJ concluded that the stop-time rule of 8 U.S.C. § 1229b(d)(1), described more fully below, took effect in April 2010 and prevented him from satisfying the ten-year continuous residence requirement.

Guaman appealed the IJ's decision to the BIA, which dismissed his appeal. Departing slightly from the IJ's reasoning, the BIA concluded that its decision in

<u>Matter of Camarillo</u>, 25 I&N Dec. 644 (BIA 2011), established that the stop-time rule is triggered when DHS serves a notice to appear on an alien, even if that notice does not contain the date and time of the initial hearing.  Accordingly, the BIA determined that the stop-time rule was triggered in this case on March 15, 2010, when Guaman first received personal service of the notice of appear, within ten years of his entry into the United States.

## DISCUSSION

Although we generally review the BIA's legal conclusions *de novo*, we grant <u>Chevron</u> deference to the agency's constructions of the INA.  <u>Mei Juan Zheng v. Holder</u>, 672 F.3d 178, 183 (2d Cir. 2012), citing <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 (1984).  Under the principles of <u>Chevron</u>, we first look to the statutory text to see if "Congress has directly spoken to the precise question at issue."  467 U.S. at 842.  If the statutory provision is silent or ambiguous, we must then consider whether the agency's interpretation is "based on a permissible construction of the statute."  <u>Id</u>. at 843.  We defer to the BIA's interpretation so long as it is "reasonable, and not 'arbitrary, capricious, or manifestly contrary to the statute.'"  <u>Adams v. Holder</u>, 692 F.3d 91, 95 (2d Cir. 2012), quoting <u>Chevron</u>, 467 U.S. at 844.  Where we review an unpublished BIA

5

decision that relies on a binding published decision, "<u>Chevron</u> deference will extend to that earlier decision's reasonable resolution of statutory ambiguity." <u>Higgins v. Holder</u>, 677 F.3d 97, 103 (2d Cir. 2012) (internal quotation marks omitted).

To establish his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b), an alien must demonstrate, *inter alia*, that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application."  8 U.S.C. § 1229b(b)(1)(A). The statute specifies, however, that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title."  <u>Id</u>. § 1229b(d)(1).  Known as the "stop-time rule," this provision aims to protect the efficiency of immigration proceedings by "eliminat[ing] the incentive for aliens to delay their deportation proceedings," precluding applicants from counting any time spent litigating their removability toward their residency requirements under § 1229b(b)(1)(A).  <u>Rojas-Reyes v. I.N.S.</u>, 235 F.3d 115, 123 (2d Cir. 2000).

The stop-time rule's statutory reference for the notice to appear, 18 U.S.C. § 1229(a), consists of three parts.  The first, § 1229(a)(1), provides a "general"

6

overview of the information to be specified in a notice to appear, which includes, *inter alia*, the "time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1). The second details procedures to be followed in notifying the alien of any subsequent changes to the time or place of the proceedings, see id. § 1229(a)(2), while the third directs the Attorney General to maintain an inventory of contact information for aliens collected under the provisions above, see id. § 1229(a)(3).

The text of the stop-time rule does not clarify whether a notice to appear must comport with all of the procedural requirements contained in § 1229(a) in order to freeze an alien's period of continuous residence. See id. § 1229b(d)(1). The rule is susceptible to at least two plausible interpretations. Section 1229b(d)(1)'s reference to a "notice to appear under section 1229(a)" might be read to require DHS to serve an alien with a notice that satisfies all the provisions of that section. Alternatively, Congress's reference to "section 1229(a)" might be read as primarily definitional, providing a reference point for the charging document that triggers the stop-time rule without demanding strict compliance with each of § 1229(a)'s requirements. The statutory language is thus ambiguous.

7

In Matter of Camarillo, 25 I&N Dec. 644 (BIA 2011), the BIA chose to adopt the second reading, holding that § 1229b(d)(1) terminates an alien's period of continuous residence in the United States "upon the service of a notice to appear on the alien, even if the notice to appear does not include the date and time of the initial hearing." Id. at 652. The BIA articulated at least five reasons for its interpretation.

First, because § 1229(a) "is the primary reference in the [INA] to the notice to appear," both identifying the document that initiates removal proceedings and clarifying that this document "is referred to as a 'notice to appear,'" Congress may reasonably have cited that provision in § 1229b(d)(1) to "specify the document the DHS must serve on the alien to trigger the 'stop-time' rule," rather than to impose strict procedural or substantive prerequisites. Id. at 647, quoting 8 U.S.C. § 1229(a).

Second, because § 1229b(d)(1) does not refer simply to § 1229(a)(1), but to "the entirety of section [122]9(a)," whose procedural provisions include a section governing changes in scheduling that may occur long after an alien is served a complete notice to appear, see 8 U.S.C. § 1229(a)(2), it makes little sense to tie

application of the stop-time rule to complete compliance with all its requirements.  Camarillo, 25 I&N Dec. at 647-48.

Third, agency regulations governing DHS's issuance of notices to appear direct DHS to include the time, place, and date of the alien's initial hearing "only 'where practicable.'"  Id. at 648, quoting 8 C.F.R. § 1003.18(b).  Contemplating that the time and date of the immigration hearing may sometimes be omitted from the initial notice, those regulations suggest that such scheduling information is not a critical element of DHS's charging document.  Id.

Fourth, while a "notice to appear" is issued by DHS, both the scheduling of the initial hearing and the issuance of any notices of hearing are tasks performed by the Immigration Court, an entirely separate legal entity.  Id.  Since the Immigration Court, unlike DHS, has no "authority to serve a notice to appear," any documents issued by that court should not be viewed as constituent parts of the "notice to appear" itself – nor should administrative "scheduling delays in the Immigration Court . . . [be allowed to] affect when an alien's residence or physical presence ends for the purposes of" cancellation of removal.  Id. at 650.

Finally, the legislative history behind the stop-time rule supports a broader reading of § 1229b(d)(1).  Enacted to "address perceived abuses arising from . . .

allowing periods of continuous physical presence to accrue after service of a charging document," and subsequently amended to clarify that it extends both to "notices to appear" under the current INA and to "orders to show cause" under its predecessor, id. at 649 (internal quotation marks omitted), the stop-time rule manifests a clear Congressional intention to discourage aliens from obstructing their immigration proceedings once notified that the government has initiated charges against them, id. at 650. This legitimate government purpose in no way depends on an alien's knowledge of the precise scheduling of his or her initial hearing. Id. at 650.

Because the reasons stated by the BIA in Camarillo reasonably support its interpretation of § 1229b(d)(1), that interpretation is entitled to Chevron deference from this Court. The BIA's conclusion that service of a notice to appear triggers the stop-time rule regardless of whether it includes the date and time of the initial hearing is a reasonable construction of the statutory language, respecting both the broader structure of the INA and the extensive evidence of legislative intent. For these reasons, all three of our sister Circuits to have considered the matter have chosen to defer to the BIA's rationale. See Gonzalez-Garcia v. Holder, 770 F.3d 431, 434-35 (6th Cir. 2014); Wang v. Holder,

10

759 F.3d 670, 671 (7th Cir. 2014); Urbina v. Holder, 745 F.3d 736, 740 (4th Cir. 2014).

Guaman argues that our holding in Guamanrrigra v. Holder, 670 F.3d 404, 410 (2d Cir. 2012), stands for the proposition that a notice to appear that includes notification of the date and time of the initial hearing (either incorporated in the notice itself or in another document) must occur within ten years of entry in order to trigger the stop-time rule. Guaman does not address the BIA's ruling to the contrary in Camarillo, which was cited along with Guamanrrigra in the BIA's dismissal of Guaman's administrative appeal.

We agree with the BIA that Guamanrrigra and Camarillo are not inconsistent. In Guamanrrigra, the petitioner had received both a notice to appear omitting the date of his initial hearing and a subsequent notice of hearing supplying the missing details. Id. at 406. Characterizing the question before us as whether a *combination* of multiple documents that satisfies the requirements of § 1229(a)(1) suffices to trigger the stop-time rule, id. at 405, we confirmed that "the stop-time rule is triggered upon service of a Notice to Appear that (alone or in combination with a subsequent notice) provides the notice required by § [122]9(a)(1)," id. at 410. Because the facts of Guamanrrigra did not raise it, we

11

did not have occasion there to address the present question: whether a timely notice to appear that omits the date and time of the initial hearing may alone trigger the stop-time rule. In holding that a notice to appear and a subsequent notice of the date and time of hearing, both served within ten years, were together sufficient to trigger the rule, the <u>Guamanrrigra</u> panel did not hold that the latter was necessary.

To the extent that certain passages in <u>Guamanrrigra</u> may be read to suggest that satisfaction of § 1229(a)(1)'s requirement that a notice to appear specify the date and time of the hearing is necessary to trigger application of the stop-time rule,[1] any such implication would be dictum that does not undermine our deference to <u>Camarillo</u>. As noted above, any such implication was unnecessary to the resolution of the case and addressed an issue not discussed by the parties. Moreover, although we decided <u>Guamanrrigra</u> some months after <u>Camarillo</u> was issued, our opinion in that case does not mention <u>Camarillo</u>, nor do the parties

---

[1] <u>See</u>, <u>e.g.</u>, <u>id</u>. at 406 (stating that, "once notice complying with § [122]9(a)(1) is provided, the stop-time rule . . . is triggered, notwithstanding any defects in subsequent notices under § [122]9(a)(2)"); <u>id</u>. at 410 ("[B]ecause service of the . . . Notice of Hearing perfected the notice required by § [122]9(a)(1), Guamanrrigra's accrual of time of continuous presence in the United States was terminated, pursuant to the stop-time rule . . . .").

12

appear to have cited <u>Camarillo</u> at any point in their briefing.  Thus, any tension

between certain language in <u>Gaumanrrigra</u> and <u>Camarillo</u>'s interpretation of the

stop-time rule does not reflect any disagreement with the BIA's reasoning, but

rather our lack of opportunity in <u>Gaumanrrigra</u> to take the BIA's decision into

account.[2]

In short, <u>Camarillo</u>'s holding that service of a notice to appear suffices to

trigger the stop-time rule regardless of whether it specifies the time and date of

the initial hearing is a permissible construction of § 1229b(d)(1), entitled to

<u>Chevron</u> deference from this Court.[3]  Accordingly, because DHS served Guaman

---

[2] Furthermore, it is worth noting that, in holding that the stop-time rule was triggered by a combination of documents that included a notice of the date and time of the scheduled hearing, the <u>Guamanrrigra</u> panel explicitly "adopt[ed] the rationale articulated by the Seventh Circuit in <u>Dababneh v. Gonzales</u>, 471 F.3d 806 (7th Cir. 2006)."  670 F.3d at 409.  The Seventh Circuit itself has since clarified that its holding in <u>Dababneh</u> is entirely consistent with <u>Camarillo</u>, deferring to the BIA's interpretation of § 1229b(d)(1) under <u>Chevron</u>.  <u>See</u> <u>Wang</u>, 759 F.3d at 674.  The Seventh Circuit's reading is thus consistent with our own conclusion that our resolution of <u>Guamanrrigra</u> raises no direct conflicts with the BIA's reasoning in <u>Camarillo</u>.

[3] We have no occasion to address in this case whether other deficiencies in a notice to appear may preclude that notice from triggering the stop-time rule.  In <u>Camarillo</u>, the BIA emphasized that the stop-time rule requires DHS's charging document to place an alien on notice that the government plans to initiate removal proceedings against him, and the government concedes that certain information required by § 1229(a)(1) may be necessary for a notice to appear to

13

with a notice to appear less than ten years after he entered the United States, that notice triggered the stop-time rule on Guaman's period of continuance residence so as to preclude Guaman from establishing his eligibility for cancellation of removal.

## CONCLUSION

For the foregoing reasons, the petition for review is **DENIED**.

---

fulfill that function. On the facts of this case, even assuming that the stop-time rule requires substantial compliance with § 1229(a)(1)'s requirements, a notice to appear that omits merely the date and time of the initial hearing satisfies that standard.