**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-1685
_____


MILTON LIZARDO OROZCO-VELASQUEZ,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
                                        Respondent

_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A076-124-724)
Immigration Judge:  Alberto Riefkohl

_____


Argued March 4, 2015

Before:  McKEE, Chief Judge, AMBRO and ROTH, <u>Circuit
Judges</u>

(Opinion filed: March 11, 2016)

Amanda Johnson                    **(Argued)**
(Admitted Pursuant to L.A.R. 46.3)
Ryan M. Moore, Esq
Stuart T. Steinberg, Esq
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

Amicus Petitioner


Robert D. Tennyson, Jr., Esq.     **(Argued)**
United States Department of Justice
Office of Immigration Litigation
450 5th Street, N.W.
Room 2043
Washington, DC 20001

Nancy E. Friedman, Esq
Brooke M. Maurer, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
Suite 7000S
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

## OPINION

**ROTH**, Circuit Judge:

In this petition for review of a decision by the Board of Immigration Appeals (BIA), we must determine the specificity required in a "notice to appear" (NTA), summoning an alien to appear before an Immigration Judge (IJ) for removal proceedings. By statute, an NTA must specify "[t]he time and place at which the proceedings will be held."[1] The issue before us is whether a notice that lacks such specificity is effective. The BIA has held that service of an NTA, which did not contain these statutory requirements, discontinued an alien's residency period for purposes of the Immigration and Nationality Act's (INA) "stop-time" rule.[2] Milton Orozco-Velasquez contends that BIA's construction of the statute is not entitled to deference and that we should grant the petition for review.

**I.**

An alien must reside in the United States "for a continuous period of not less than 10 years" to be eligible for

---

[1] 8 U.S.C. § 1229(a)(1)(G)(i).

[2] The INA's "stop-time" rule "deem[s] to end" an alien's "period of continuous residence . . . when the alien is served a notice to appear under" the provision setting out the NTA requirements. *See* 8 U.S.C. § 1229b(d)(1).

3

cancellation of removal.[3]  Orozco-Velasquez, a Guatemalan native and citizen, arrived in the United States in September 1998 or February 1999[4] without being admitted or paroled.[5] [6] On May 9, 2008, Orozco-Velasquez was served with a NTA, ordering him to appear before an IJ in Elizabeth, New Jersey, and noting that the date and time of removal proceedings were "to be set."  Almost two years later, on April 7, 2010, he received by mail an otherwise identical NTA, ordering him to appear before an IJ in Newark, New Jersey.  The government has acknowledged that the second NTA was sent in order to correct the address of the Immigration Court before which Orozco-Velasquez was summoned to appear.  On April 12, 2010, he was served with a Notice of Hearing, announcing the date and time of the removal proceedings.

On May 14, 2010, Orozco-Velasquez filed an application for cancellation of removal on the ground that his removal would result in "exceptional and extremely unusual hardship" to his mother, a legal permanent resident of the United States.  Thereafter, he moved to terminate removal proceedings, arguing that the April 2010 NTA effectively

---

[3] *See* 8 U.S.C. § 1229b(b)(1)(A).

[4] Orozco-Velasquez provides the earlier entry date.  The Immigration Judge identified the later one, which the BIA characterized as "perhaps an incorrect date."

[5] *See* 8 U.S.C. § 1182(a)(6)(A), (a)(9)(B)(ii).

[6] The initial NTA was served within ten years of Orozco-Velasquez's entry into the United States, assuming either arrival date; the corrected NTA came ten years after entry, assuming either arrival date.  Thus, the discrepancy in dates does not affect Orozco-Velasquez's eligibility for cancellation of removal.

4

superseded the May 2008 NTA and as a result he did not receive proper notice of the proceedings until after he had resided in the United States for a continuous ten-year period.[7] In an August 19, 2011, oral decision, the IJ denied Orozco-Velasquez's motion to terminate and ordered him removed. The IJ did not evaluate Orozco-Velasquez's cancellation of removal application on the merits, since he "tend[ed] to agree with" the government's characterization of the April 2010 NTA as non-superseding. Thus, the IJ found that notice was effective upon service of the April 2010 NTA, precluding Orozco-Velasquez's application for cancellation of removal under the INA's "stop-time" rule, The BIA dismissed the ensuing appeal. Relying on its own precedent, *In re Camarillo*,[8] the BIA held that the initial NTA, containing an inaccurate Immigration Court address and omitting the date and time of Orozco-Velasquez's removal proceedings, was not defective and thus provided adequate notice. The BIA acknowledged that the *Camarillo* defect—omission of the proceedings' date and time—was "different" than giving the wrong address for the court. Nonetheless, the BIA applied its holding in *Camarillo* to bar Orozco-Velasquez's application for cancellation of removal. The BIA also cited a Department of Justice regulation providing for amendment of an NTA to "add[] or substitute[] charges of inadmissibility and/or deportability and/or factual allegations"[9] in support of its determination that "a Notice to Appear is not defective simply because the document does not include the specific date, time, or place of hearing."

---

[7] At no point did Orozco-Velasquez contest his removability.

[8] 25 I&N Dec. 644 (BIA 2011).

[9] 8 C.F.R. § 1240.10(e).

Orozco-Velasquez *pro se* filed a petition for review in this Court. We appointed *pro bono amicus curiae* counsel[10] and directed *amicus curiae* and the parties to address in supplemental briefs whether (1) *Camarillo* is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,[11] and (2) the BIA erred in applying *Camarillo* to bar Orozco-Velasquez's application for cancellation of removal. We also requested that the parties discuss a recent Second Circuit decision, *Guamanrrigra v. Holder*,[12] holding that, where an initial NTA contains errors and/or omissions that are subsequently corrected, the "stop-time" rule is triggered only upon perfection of notice.

## II.

The BIA had jurisdiction under 8 U.S.C. § 1103(g)(2). The government maintains that 8 U.S.C. § 1252(g)[13] deprives us of jurisdiction to consider Orozco-Velasquez's present appeal. The government relies exclusively on our

---

[10] We express our appreciation to counsel Stuart T. Steinberg and Ryan M. Moore, of Dechert LLP, who undertook the amicus curiae assignment pro bono, and to law student Amanda Johnson, who argued adeptly in support of Orozco-Velasquez.

[11] 467 U.S. 837 (1984).

[12] 670 F.3d 404, 410 (2012) (per curiam).

[13] Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

interpretation of that provision in *Calix v. Attorney General*.[14] That reliance is misplaced. Setting aside its nonprecedential status,[15] *Calix* does not stand for the proposition that the government advances, namely, that an IJ's denial of a petitioner's motion to terminate proceedings necessarily implicates a discretionary enforcement decision by the Attorney General and is therefore unreviewable.

The motion to terminate in *Calix* was premised on the Department of Homeland Security's purported failure to follow its own internal procedures in commencing the removal proceedings in the first place. Thus, the motion to terminate served as a not-so-thinly veiled challenge to the Attorney General's decision to commence proceedings—a plainly discretionary exercise of agency authority.[16] To the extent that § 1252(g)'s jurisdictional bar is aimed at "the Attorney General's decision to commence removal proceedings,"[17] it is inapplicable here. Orozco-Velasquez's contention is not that the proceedings were improperly commenced but that he did not receive proper notice to appear at removal proceedings until after the running of the

---

[14] 423 F. App'x 240 (3d Cir. 2011).

[15] *See* Third Circuit Internal Operating Procedure 5.7; *Jamison v. Klem*, 544 F.3d 266, 278 n.11 (3d Cir. 2008) ("We do not accept [nonprecedential] opinions as binding precedent[.]").

[16] *See* 8 U.S.C. § 1252(g); *also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

[17] *See Calix*, 423 F. App'x at 241.

stop-time rule and thus he should be eligible to apply for cancellation of removal. For that reason, the provisions of § 1252(g) do not apply to the present situation. We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order dismissing Orozco-Velasquez's appeal.

### III.

Where an issue of law implicates the BIA's expertise, we review its legal determinations de novo, subject to the *Chevron* principles of agency deference.[18] "Under *Chevron*, the statute's plain meaning controls, whatever the Board might have to say. But if the law does not speak clearly to the question at issue, a court must defer to the Board's reasonable interpretation, rather than substitute its own reading."[19]

The BIA determined that failure to "include the specific date, time, or place of hearing" in a NTA has no bearing on a notice recipient's removability.[20] Because that

---

[18] *See Bautista v. Att'y Gen.*, 744 F.3d 54, 58 (3d Cir. 2014) (citing *Chevron*, 467 U.S. at 844). Moreover, where, as here, "the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ." *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014).

[19] *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014) (internal citation omitted).

[20] We assume without deciding that construction of the INA's NTA and "stop-time" provisions implicates the BIA's "expertise in a meaningful way," *Cyberworld Enter. Techs., Inc. v. Napolitano*, 602 F.3d 189, 196 (3d Cir. 2010), so that the agency's determination is reviewed under **Chevron's two-step inquiry. Compare INS v. Aguirre-Aguirre, 526 U.S.**

conclusion conflicts with the INA's plain text, it is not entitled to *Chevron* deference.

In pertinent part, 8 U.S.C. § 1229(a) provides as follows:

> (1) In general
>
> In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . specifying the following:
>
>> (A) The nature of the proceedings against the alien.
>>
>> (B) The legal authority under which the proceedings are conducted.
>>
>> (C) The acts or conduct alleged to be in violation of law.
>>
>> (D) The charges against the alien and the statutory provisions alleged to have been violated.

---

**415, 424-25 (1999) (recognizing BIA's expertise in** defining "serious nonpolitical crime," as used in INA), *with Sandoval v. Reno*, 166 F.3d 225, 239-40 (3d Cir. 1999) (disregarding BIA's claimed expertise in construing INA provision's effective date); *Bamidele v. INS*, 99 F.3d 557, 561-62 (3d Cir. 1996) (rejecting BIA's claimed expertise in interpreting INA section's statute of limitations).

\*\*\*

(G)(i) The time and place at which the proceedings will be held.

\*\*\*

(2) Notice of change in time or place of proceedings

(A) In general

In removal proceedings under section 1229a of this title, in the case of any change or postponement in the time and place of such proceedings[] . . . a written notice shall be given in person to the alien . . . specifying--

(i) the new time or place of the proceedings, and

(ii) the consequences under section 1229a(b)(5) of this title of failing, except under exceptional circumstances, to attend such proceedings.

The INA's "stop-time" provision, which governs an alien's accrual of continuous residency (ten years of which

must be attained to apply for cancellation of removal),[21] specifically incorporates the aforementioned notice requirements: "[A]ny period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title . . .."[22] Thus, an alien's period of continuous residence is interrupted, that is, *time stops*, only when the government serves a NTA in conformance with 8 U.S.C. § 1229(a).

We disagree with those of our sister circuit courts of appeals that have found ambiguity in § 1229b(d)(1)'s "stop-time" definition.[23] To be sure, the "stop-time" statute

---

[21] *See* 8 U.S.C. § 1229b(b)(1)(A).

[22] *Id.* § 1229b(d)(1).

[23] *See Guaman-Yuqui v. Lynch*, 786 F.3d 235, 238-39 (2d Cir. 2015); *Urbina v. Holder*, 745 F.3d 736, 739-40 (4th Cir. 2014); *Gonzalez-Garcia v. Holder*, 770 F.3d 431, 434 (6th Cir. 2014); *Yi Di Wang v. Holder*, 759 F.3d 670, 674 (7th Cir. 2014). We note that the *Urbina* court did not engage in its own construction of the "stop-time" statute. Instead, it offered: "As to [*Chevron*'s] first step, we agree with the BIA that the relevant statutory provision is ambiguous." 745 F.3d at 740; *in speciem contra Chevron*, 467 U.S. at 842-43 & n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). To the extent that the Seventh Circuit Court of Appeals relied in turn on the *Urbina* court's step one analysis in arriving at the same conclusion, 759 F.3d at 674 (citing *Urbina*, 745 F.3d at 739-40), it only compounded a misapplication of *Chevron*'s judicially resolved, text-centered threshold inquiry.

"encompasses more than just [§ 1229(a)(1)] dealing with the NTA."[24] Of particular import, the "stop-time" rule also incorporates § 1229(a)(2), which permits a "change or postponement in the time and place of such proceedings" if the alien is provided written notice of the change.[25] But the statute's incorporation of these additional provisions does nothing to diminish the clear-cut command set out in § 1229(a)(1) that notice "*shall* be given in person to the alien . . . specifying," *inter alia*, "[t]he time and place at which the proceedings will be held."[26]

"The word 'shall' is ordinarily the language of command."[27] Black's Law Dictionary defines "shall" as "a duty to; more broadly, is required to." Black's characterizes this most common usage as "the mandatory sense that drafters typically intend and that courts typically uphold" statutes containing "shall."[28] In the absence of a conflicting canon of statutory construction (*e.g.*, statutorily imposed deadlines for

---

[24] *See* Gov't Supp. Br. at 7.

[25] 8 U.S.C. § 1229(a)(2)(A).

[26] *Id.* § 1229(a)(1)(G)(i) (emphasis added).

[27] *Ala. v. Bozeman*, 533 U.S. 146, 153 (2001) (internal quotation marks omitted); *see Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").

[28] Black's Law Dictionary 1499 (9th ed. 2009); *see Eid v. Thompson*, 740 F.3d 118, 123 (3d Cir. 2014) ("When words [in statutes] are left undefined, we have turned to standard reference works such as legal and general dictionaries in order to ascertain their ordinary meaning." (internal quotation marks and citation omitted)).

administrative action),[29] we presume that, when Congress says *shall*, it conveys a mandatory rather than a hortatory instruction. We therefore hold that an NTA served "under section 1229(a)" is effective, for purposes of the "stop-time" rule,[30] only when it includes each of the items that Congress instructs "shall be given in person to the alien."[31]

Moreover, in requiring that an "alien [be] served a notice to appear under section 1229(a)" to suspend the alien's accrual of continuous residency, 8 U.S.C. § 1229b(d)(1) simultaneously compels government compliance with each of § 1229(a)(1)'s NTA requirements and accommodates a "change or postponement in the time and place of [removal] proceedings" when the government provides written notice of such changes to the alien. Congress's incorporation of § 1229(a) in its entirety conveys a clear intent: that the government may freely amend and generally supplement its initial NTA;[32] but to cut off an alien's eligibility for cancellation of removal, it must do so within the ten years of continuous residence identified in § 1229b(b)(1)(A) (one of three cancellation-of-removal provisions the "stop-time" rule exists to explicate). Thus, an initial NTA that fails to satisfy § 1229(a)(1)'s various requirements will not stop the

---

[29] *See, e.g.*, *Shenango Inc. v. Apfel*, 307 F.3d 174, 193-94 (3d Cir. 2002).

[30] 8 U.S.C. § 1229b(d)(1).

[31] *Id.* § 1229(a)(1).

[32] Because 8 C.F.R. § 1240.10(e) (providing that the Government may "add[] or substitute[] charges of inadmissibility and/or deportability and/or factual allegations" in a NTA) is consistent with our interpretation of 8 U.S.C. §§ 1229 and 1229b, we do not address the regulation's validity.

continuous residency clock until the combination of notices, properly served on the alien charged as removable, conveys the *complete* set of information prescribed by § 1229(a)(1) within the alien's first ten years of continuous residence.[33]

Here, the government did not comply with § 1229(a)(1)'s directive until April 2010, when it served Orozco-Velasquez with a NTA correcting the address of the Immigration Court and a Notice of Hearing establishing the date and time of removal proceedings. To the extent that the

---

[33] *Accord Guamanrrigra*, 670 F.3d at 610 ("[W]e hold that the stop-time rule is triggered upon service of a Notice to Appear that (alone or in combination with a subsequent notice) provides the notice required by [§ 1229(a)(1)], notwithstanding any imperfections in the service of subsequent notices of changes in the time or place of a hearing under § [1229(a)(2)].").

In *Guaman-Yuqui*, the court overruled the *Guamanrrigra* court's self-styled "hold[ing]" partly on the basis of legislative history. 786 F.3d at 238-39. Notably, the only legislative history the court identified was an explanatory memorandum that accompanied an omnibus appropriations bill amending the "stop-time" rule. 143 Cong. Rec. S12265-01 (daily ed. Nov. 9, 1997). The memorandum submitted by five senators purports to explain why Congress enacted the "stop-time" provision in the first place, *id.* (to alter a status quo in which "people were able to accrue time toward the [then-]seven-year continuous physical presence requirement after they already had been placed in deportation proceedings"), but nowhere addresses whether service of a defective NTA bears the same "stop-time" consequences as a NTA that complies with § 1229(a)(1).

14

government served the second NTA and Notice of Hearing pursuant to § 1229(a)(2),[34] it did so too late to affect Orozco-Velasquez's eligibility for cancellation of removal. By the time he was served with the latter notices, Orozco-Velasquez had resided in the United States continuously for more than eleven years. As the "stop-time" rule does not apply to such tardy service, Orozco-Velasquez was entitled to apply for cancellation of removal.

## **IV.**

A Notice to Appear is not meant to be enigmatic. Its purpose is to provide an alien with notice—of the charges against him and the basic contours of the proceedings to come. During the first nine and a half years of his continuous residence in the United States, Orozco-Velasquez was given no notice at all. Mere months before the ten-year mark of "stop-time" significance, he received an NTA omitting fundamental, statutorily required information and misinforming him of the proceedings' location.

---

[34] We express no opinion as to whether the NTA and/or Notice of Hearing served on Orozco-Velasquez in April 2010 would be effective outside the context of the "stop-time" rule. We are mindful, however, that 8 U.S.C. § 1229(a)(2) provides only for a "change or postponement in the time and place of [removal] proceedings," and does not by its terms address present circumstances, in which the Government did not include a date or time for removal proceedings in the initial NTA. Thus, the April 2010 notice did not provide "the *new* time . . . of the proceedings," 8 U.S.C. § 1229(a)(2)(i) (emphasis added), but rather the *only* time of which Orozco-Velasquez was ever notified.

The BIA has permitted the government's counter-textual mode of providing notice. Taken to its logical conclusion, the agency's approach might treat even a "notice to appear" containing no information whatsoever as a "stop-time" trigger, permitting the government to fill in the blanks (or not) at some unknown time in the future. We believe such an approach contradicts the plain text of the INA's "stop-time" and NTA provisions. Therefore, we will not defer to an interpretation of the INA that would omit the requirement that full notice be provided to non-citizens facing such critical proceedings.

For the foregoing reasons, we will grant the petition for review, vacate the BIA's order dismissing the petitioner's appeal, and remand this case to the BIA with instructions to remand it to the Immigration Court to consider Orozco-Velasquez's application for cancellation of removal.[35]

---

[35] We anticipate that on remand Orozco-Velasquez's application for cancellation of removal will receive the "individualized determination" due process demands. *See Mudric v. Att'y Gen.*, 469 F.3d 94, 100 (3d Cir. 2006). We need not decide whether the Immigration Court's initial failure to assess his application on the merits constituted an abridgment of procedural due process.